**Deborah PILCHAK, Petitioner,**

v.

**Donald CAMPER, Respondent.**

**No. 86–0972–CV–W–8.**

United States District Court, W.D. Missouri, W.D.

March 23, 1990.

Roger Brown, Bushman, Neff, Gallaher and Brown, Jefferson City, Mo., George M. Bock, Slagle & Bernard, P.C., Paul R. Shy, Kansas City, Mo., for petitioner.

Stephen D. Hawke, Atty. General's Office, Jefferson City, Mo., for respondent.

## MEMORANDUM OPINION AND ORDER

STEVENS, District Judge.

### I. INTRODUCTION

This is an action for writ of habeas corpus. Its labyrinthine progression through the successive mazes of the state and federal court systems gives one pause to wonder whether the Great Writ is able to serve its true function when it takes four years for a case to wind its way to the conclusion, as the court concludes here, that petitioner is being unconstitutionally deprived of her liberty. This court concludes that had petitioner had competent representation and had the jury been advised of all of the relevant facts in both the guilt and sentencing phases of the trial (more on the trial judge's comments about this later) it is clearly within the realm of possibility that she would have been found not guilty and it is almost undeniable, as the trial judge admitted, that she would not have been sentenced so severely.

In October of 1981 an informer by the name of Lee Downing divulged to the Cole County, Missouri Sheriff that the illicit sale of cocaine was going on in the area. The distributor was reported to be Gary Erwin McCaw. Based on this information, John Bickers, a Missouri State Highway Patrol Officer was assigned to conduct an undercover investigation. Bickers, using an assumed identity, was introduced to McCaw by Downing for the purpose of purchasing cocaine on November 11, 1981. Bickers purchased one ounce of cocaine at this initial meeting for $2,500.00. Additional purchases of a similar quantity were made on November 17 and November 24. On the

latter date, Bickers and McCaw discussed a purchase of a significantly larger quantity and decided to consummate the deal on December 5, 1981 at the Best Western Motel in Jefferson City. Up to this point, Bickers had neither seen petitioner nor heard her name mentioned.

The undercover operation was to conclude with the December 5 sale, so the Best Western Motel was placed under extensive surveillance. Rooms 135 and 137 of the motel were rented, the latter to be used by Bickers and another undercover agent, and the former by police officers to monitor Room 137. McCaw and petitioner arrived at the motel together at 10:00 a.m. but they separately rented rooms. McCaw rented Room 141 and petitioner took Room 139. McCaw then telephoned Bickers and told him to come to Room 141. Bickers did so and found McCaw there with a briefcase containing 20 ounces of a hard crystalline substance which ultimately tested to be a high grade cocaine. This amount was only part of the planned purchase, McCaw telling Bickers that the balance of the drugs was in the next room with his girlfriend. McCaw and Bickers then went to Bickers' room to complete the purchase and on the way McCaw stopped at Room 139 and knocked, petitioner opened the door and McCaw handed her the briefcase but no words were exchanged. It should be noted that this is the only appearance prior to her arrest that petitioner makes in the government's case in chief and that she appears otherwise only in rebuttal evidence. Bickers and McCaw proceeded to Room 137 and the price for the cocaine being purchased was computed. A few seconds later, McCaw left and shortly returned with a briefcase which then contained the amount of cocaine which Bickers had agreed to buy from McCaw. McCaw was given cash for the cocaine and while he was counting it officers in the next room were alerted and he was arrested. At the same time, other officers went to Room 139, knocked on the door, were admitted by petitioner and she was then placed under arrest.

On May 25, 1982, after a trial in the Circuit Court of Cole County, Missouri, in which petitioner's appointed counsel was the assistant public defender of Cole County, Missouri, a jury found petitioner guilty of the felony sale of cocaine.[1] The post-conviction sentencing hearing was held and the jury recommended a life sentence. The trial judge followed the jury's recommendation and the conviction and sentence were upheld on direct appeal. *State v. Pilchak*, 655 S.W.2d 646 (Mo.Ct.App.1983).

McCaw was tried separately in Montgomery County, found guilty and sentenced to life on the cocaine charge and five years on a weapons charge. *State v. McCaw*, 668 S.W.2d 603, 604 (Mo.Ct.App.1984). McCaw succeeded in obtaining a new trial because the court determined that the jury selection procedure in his trial was fatally flawed. *Id.* McCaw then pled guilty and received a sentence of twenty-six years. He is now free. Tr., Evidentiary Hearing of January 26, 1990 at 69.

Petitioner now seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This opinion, which concludes with an order granting the writ sought by petitioner, after reviewing the procedural history of this case, discusses the following issues:

1. Was the trial fatally flawed by the participation of the Cole County Sheriff's Office in securing the venire and selection of the jury panel?

2. Should the writ be granted because petitioner did not receive effective assistance of counsel at any stage in these proceedings at which she was constitutionally entitled to such assistance?

3. In the final analysis and considering the cumulative effect of the total record, does the rule of fundamental fairness dictate that the writ issue?

---

1. Petitioner was also found guilty on a weapons charge and received a two-year sentence. Because she has completed service of this sentence, only the drug conviction is properly be- fore this court in this lower court matter. 28 U.S.C. § 2241(c); *Cotton v. Mabry*, 674 F.2d 701, 703–04 (8th Cir.1982), *cert. denied*, 459 U.S. 1015, 103 S.Ct. 374, 74 L.Ed.2d 508 (1982).

## II. PROCEDURAL HISTORY

Following her sentencing on July 30, 1982, petitioner sought post-conviction collateral relief in state court pursuant to Missouri Supreme Rule 27.26.[2] Relief was denied, and the denial was affirmed on appeal. *Pilchak v. State,* 705 S.W.2d 599 (Mo.Ct.App.1986) (per curiam). Petitioner then commenced this federal habeas action on August 13, 1986 by filing a pleading styled a "Petition for Habeas Corpus and Injunctive Relief for Denial of Civil and Constitutional Rights." The petition sounded both in 28 U.S.C. § 2254 and 42 U.S.C. § 1983. On November 10, 1986, this court granted petitioner leave to file a first amended petition, dismissed without prejudice the section 1983 count of that petition and directed respondent to answer the remaining section 2254 counts. After traversing respondent's answer, petitioner sought and on February 10, 1987 was granted leave to file a second amended petition. Respondent filed its answer to the second amended petition on March 3, 1987 and petitioner her traverse on March 11, 1987. By Memorandum and Order dated April 2, 1987, the court determined that petitioner had exhausted her claim of ineffective assistance of counsel in the state court except for ground 8.[3] The court also ordered an evidentiary hearing.

That hearing was conducted in Jefferson City on April 9 and 10, 1987, and on May 8, 1987 in Kansas City, Missouri. As a result of this hearing, the court determined that petitioner was presenting new grounds in support of her claim that she was rendered ineffective assistance of counsel which had not previously been raised in state court. Because the court believed there was a non-futile state avenue through which these grounds could be exhausted, petitioner was directed either to go back to the state court and exhaust or delete these new grounds from her petition, pursuant to *Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). Memorandum Opinion and Order of May 31, 1988 at 10.

Petitioner elected to return to state court and filed a second 27.26 motion which the state moved to dismiss on the grounds that it was successive and thus prohibited under Missouri Supreme Court Rule 27.26(d). On August 26, 1988, Judge McHenry of the Circuit Court in Cole County accepted that argument, ruled the motion successive and denied it. Nearly three years after petitioner filed her second amended habeas petition the Missouri Court of Appeals of the Western District affirmed the trial court. *Pilchak v. State,* 773 S.W.2d 867 (Mo.Ct.App.1989).

After nearly eight years since petitioner's trial and sentencing, petitioner's third amended habeas corpus petition [4] is now before the court. Petitioner claims she is being held in custody in violation of the Constitution of the United States in that she was denied her right to a fair trial by a randomly and impartially selected jury as guaranteed by the fifth, sixth and fourteenth amendments to the Constitution and that she was denied effective assistance of counsel in violation of her sixth and fourteenth amendment rights. Petitioner sets forth thirty-four separate grounds in support of these claims. For reasons which will be detailed below, the court grants petitioner habeas corpus relief.

## III. THE JURY ARRAY ISSUE

### A. *Introduction*

The sixth amendment to the Constitution of the United States mandates a fair and impartial jury.[5] Accordingly, the Eighth

---

**2.** Rule 27.26 was repealed effective January 1, 1988 and was replaced by Rules 24.035 and 29.15. Rule 29.15 governs the state post-conviction remedy available to a defendant who has been found guilty after a trial.

**3.** The grounds listed in the habeas petition will be detailed later in this order.

**4.** Petitioner's third amended habeas petition consists of the second amended petition plus the

grounds for relief presented for the first time at the evidentiary hearing in April and May of 1987 before this court. *See* Memorandum Opinion and Order of May 31, 1988 at 5 n. 4.

**5.** The sixth amendment provides in part "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and the district wherein the crime shall have been committed...."

Circuit Court of Appeals, in considering the fair and impartial jury aspect of the sixth amendment, held that the "participation of an interested official in the juror selection process" is "fundamentally unfair" and thus a violation of due process. *Anderson v. Frey*, 715 F.2d 1304, 1309 (8th Cir.1983), *cert. denied*, 464 U.S. 1057, 104 S.Ct. 739, 79 L.Ed.2d 198 (1984).

Petitioner claims that the procedures employed in the selection of her jury violated the fifth, sixth, and fourteenth amendments to the United States Constitution because of the Cole County Sheriff's office participation in the selection of her jury. More specifically, at the time of petitioner's trial, the jury in Cole County was selected in the following manner: (1) A computer list of 750 prospective jurors was summoned; (2) The clerk's office mailed questionnaires to all persons on the list; (3) A list of those who returned questionnaires was designated for service and that list was delivered to the sheriff; (4) The deputy sheriff made out cards for each potential juror on the list and kept the cards in the sheriff's office; (5) As veniremen were needed for trial, the deputy sheriff shuffled the cards and started calling panel members on the phone. The deputy sheriff stated that he paid attention to particular cards. This was the very method of venire selection held to violate Missouri Revised Statutes §§ 495.080 and 495.100 in *State v. Bynum*, 680 S.W.2d 156 (Mo.1984). The state stipulated that the jury panel selection procedures used in petitioner's trial were the same as those in *Bynum*. Tr., First Rule 27.26 Motion (hereinafter first motion) at 97. Petitioner states that this method of selection resulted in a jury which was not impartial or randomly selected and was "fundamentally unfair" pursuant to *Anderson v. Frey*, 715 F.2d at 1309, and thus deprived her of her right to due process. The court agrees.

### B. *Procedural Posture*

■ Before the merits of petitioner's contention concerning the jury array may be addressed by this court, petitioner must have exhausted this claim in the state courts, that is, she must have given the state courts a fair opportunity to pass upon this claim that she now raises in federal court. *See Picard v. Connor*, 404 U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971). This requirement that federal courts not exercise habeas review of a state conviction unless the state courts have had an opportunity to consider and correct any violation of federal law expresses respect for this nation's dual judicial system and concern for harmonious relations between state and federal courts. *See Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982).

■ The exhaustion requirement is not met unless the federal claim has been fairly presented to the state courts. In order to have fairly presented her federal claim to the state courts, she must have informed the state court of both the factual and legal premises of the claim she asserts in this court. *Daye v. Attorney General of the State of New York*, 696 F.2d 186, 191 (2d Cir.1982) (en banc) (citations omitted). Specifically, she must have set forth in state court all of the essential factual allegations asserted in her federal petition; if material factual allegations were omitted, the state court has not had a fair opportunity to rule on the claim. *Id.* Likewise, petitioner must have placed before the state court essentially the same legal doctrine that she asserts in her federal petition. *Id.* If petitioner did not present her federal claim at the state court level, a procedural default has occurred and the federal court cannot reach the merits of the claim unless she can show cause and prejudice for the failure to raise the claim at the state court level. *Wainwright v. Sykes*, 433 U.S. 72, 84, 97 S.Ct. 2497, 2505, 53 L.Ed.2d 594 (1977).

■ However, if the a claim is presented to the state court, and the state court addresses the merits of the claim and does not apply its procedural bar, then the federal court may hear the merits of the claim because such review would not violate the comity principal. *Harris v. Reed*, 489 U.S. 255, 109 S.Ct. 1038, 1045, 103 L.Ed.2d 308 (1989). But if the state court

relies on a procedural bar, it must "clearly and expressly" say so. *Id.*

Petitioner challenged the jury selection process in the first motion, the second Rule 27.26 motion (hereinafter second motion) and the appeal of the second Rule 27.26 motion (hereinafter second appeal), but the selection process was not challenged at trial or on appeal of her first Rule 27.26 motion (hereinafter first appeal). The court must therefore address whether procedural bars exist resulting from the failure to raise this claim at trial and on the first appeal. The court finds that the petitioner overcomes these procedural defaults for two reasons. First, the court finds that the state court ruled on the merits of the first motion and thus there is no procedural bar for the failure of petitioner's defense counsel to object to the jury array at trial. The court also finds no procedural bar due to the failure to exhaust even though the issue was not raised at the first appeal. Second, the court finds that even if there was a procedural bar because of the failure to raise the jury array at trial, petitioner overcomes this bar by showing cause and prejudice. The court will now discuss those conclusions in the order stated.

### C. The State Court's Ruling on the Merits of the Jury Array Issue

■ Petitioner contends that even though defense counsel failed to object to the jury array at trial, no cause and prejudice need be shown because the court, upon petitioner's first motion, ruled on the merits of this claim. In support of this proposition, petitioner relies on the rule that if the state court does not apply a procedural bar to a post-conviction claim, then the federal court may not apply *Wainwright v. Sykes* to avoid addressing the merits of the same claim. *Euell v. Wyrick*, 675 F.2d 1007, 1008–10 (8th Cir.1982); *Shaddy v. Clarke*, 890 F.2d 1016 (8th Cir.1989). This rule of law was recently reaffirmed by the Supreme Court in *Harris v. Reed*, 489 U.S. 255, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989), where the Supreme Court said that the state must have "clearly and expressly" relied on a procedural bar as an independent basis for denial of a claim in order for

a federal court to refuse to review such a claim. *Id.* at ——, 109 S.Ct. at 1043.

In the instant case, the jury array issue was raised at the first motion by asserting "Movant did not receive a fair trial since the jury that heard the case had not been selected in accordance with Missouri law and the procedures used clearly denied the due process of law and violated the fifth, sixth and fourteenth amendments to the United States Constitution. Movant suffered substantial prejudice because of the denial of these constitutional rights." Legal File of First Motion at 9. The motion raised specific arguments, including that law enforcement officers were allowed to assist in jury selection and that extra members of the jury panel were selected at the discretion of the sheriff or his deputies and were then called on the telephone by them. At the hearing on petitioner's first motion, the court ruled that since petitioner's defense counsel had not challenged the jury array at trial, the jury selection matters were only to be heard with respect to competency of counsel. The court's reasoning was that the jury selection issue was a matter that could have been raised on direct appeal but it was not and therefore could not be considered at that stage of the proceedings. Tr., First Motion at 95–97. Thus, at this point the state court invoked a procedural bar of the jury array issue except with respect to the ineffective assistance of counsel issue.

However, when the Memorandum Decision was issued deciding the first motion, the state circuit court did rule on the merits of the jury array claim. Noting the paragraphs in petitioner's motion addressing the jury selection issue, the court stated: "Movant offered no testimony whatsoever dealing with the manner by which such juries were selected. The only allegations are conclusionary [sic] at best, and do not allege facts as was done in *St [sic] vs. Bynum*, No. 66340 [680 S.W.2d 156] (Sup.Ct. of Mo.1984)." Memorandum Decision of First Motion at 2. This is a puzzling statement since the facts concerning petitioner's jury selection had been stipulated during the hearing of the first motion

as being the same as in *State v. Bynum*, 680 S.W.2d 156 (Mo.1984). Tr., First Motion at 97. In *Bynum*, the Missouri Supreme Court held the jury selection procedures in Cole County to be violative of Missouri statutes. *Bynum*, 680 S.W.2d at 161.

Because this claim was raised at petitioner's first motion and the state court ruled on the merits and did not clearly and expressly apply a procedural bar, the rule of *Harris v. Reed*, mandates that this court reach that conclusion. Accordingly, no cause and prejudice need be demonstrated for defense counsel's failure to object to the jury array at trial.

■ Before the court considers the merits of this claim, the fact that petitioner failed to raise this claim on the first appeal must be addressed. This situation would appear on its face to be one of failure to exhaust thus requiring petitioner either to return to state court with this claim or delete it from her petition. *Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). However, the court does not find an exhaustion problem exists as to this issue because "a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred." *Harris v. Reed*, 489 U.S. at —— n. 9, 109 S.Ct. at 1043 n. 9. At the evidentiary hearing conducted on January 26, 1990, petitioner's counsel for her first appeal, appearing as a witness, testified that he did not appeal the jury array issue because he believed it was clear the appellate court would hold the claim procedurally barred. Tr., Evidentiary Hearing of January 26, 1990 at 46. Counsel testified further that he based that conclusion on *State v. Bynum*, 680 S.W.2d 156 (Mo.1984), where the court stated: "The deviations demonstrated by the evidence require reversal, in accordance with the defendant's properly presented claim of error.... Our holding is not authority for disturbing the result in any case in which the array was

not challenged prior to trial." *Id.* at 161. This court concludes that had the jury array issue been raised at the first appeal, the reviewing court would have held the claim to be procedurally barred. Accordingly, there is no exhaustion problem resulting from the failure to raise the jury array issue at the first appeal.

In summary, petitioner has demonstrated that the state court ruled on the merits of the jury array issue at the first motion, and therefore there is no procedural bar resulting from the failure of her defense counsel to challenge the jury array issue at trial. Petitioner has also shown that no cause and prejudice need be demonstrated for the failure to appeal the jury array issue at the first appeal. However, in the event that the conclusion that the state court ruled on the merits should be held to be erroneous,[6] the court alternatively concludes that petitioner has shown cause and prejudice for defense counsel's failure to object to the jury array at trial. That conclusion will be discussed next.

### D. *Cause and Prejudice for Failure to Object to the Jury Array at Trial*

■ Petitioner has shown that the state court ruled on the merits of this claim, and further there is no exhaustion problem even though appellate counsel failed to raise this claim on appeal. In addition to these showings, petitioner could overcome the procedural bar (if it existed) resulting from defense counsel's failure to object to the jury array by showing cause and prejudice pursuant to *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). First, petitioner clears the cause hurdle of *Sykes* by demonstrating that the cause of this default was the result of this claim being novel. *Reed v. Ross*, 468 U.S. 1, 16, 104 S.Ct. 2901, 2910, 82 L.Ed.2d 1 (1984). The novelty test established in *Reed* requires a two-part showing: 1) That the claim is "so novel that its legal basis is not reasonably available to counsel," and 2) earlier precedent which led counsel to be-

---

6. The conclusion that no exhaustion problem exists even though the jury array was not raised at the first appeal does not change with an

alternative showing of cause and prejudice with respect to defense counsel's failure to object to the jury array at trial.

lieve that the claim was not cognizable was subsequently overruled. *Id.*

Approaching the first prong of *Reed,* in order to determine if the novelty exception to the cause requirement of *Sykes* applies to the case at hand, the state of the law at the time of petitioner's trial in 1982 must be considered. The Missouri courts had approved the practice of the sheriff's office selecting additional veniremen in 1980 by holding that "substantial compliance with the required statutory procedure was sufficient." *State v. Johnson,* 606 S.W.2d 655 (Mo.1980). *See also, State v. Friend,* 607 S.W.2d 902 (Mo.Ct.App.1980) (Court approved the practice of the sheriff picking up veniremen for criminal jury trial). The next year, in *State v. Bostic,* 625 S.W.2d 128 (Mo.1981), the court held that it was permissible for the trial judge to have the sheriff choose additional veniremen. In *Holt v. Wyrick,* 649 F.2d 543 (8th Cir.1981), *cert. denied,* 454 U.S. 1143, 102 S.Ct. 1002, 71 L.Ed.2d 295 (1982), the Eighth Circuit Court of Appeals upheld the practice of the sheriff's office picking up veniremen for jury service and stated that this practice did not violate defendant's due process rights where the sheriff was not involved in the investigation. *Id.* at 546. Thus the case law at the time of petitioner's trial would have led petitioner's counsel reasonably to conclude that the longstanding practice of the sheriff summoning additional veniremen by the "pick up" or "bystander" selection method had been previously challenged in the Missouri and federal courts and those challenges had been unsuccessful. Further, since *Anderson v. Frey,* 715 F.2d 1304 (8th Cir.1983), was not decided until 1983, the court finds that petitioner has shown that this constitutional claim was sufficiently novel because the legal basis for the claim was not reasonably available to defense counsel at the time of petitioner's trial.

Approaching the second prong of *Reed,* petitioner must also show that precedent approving the method of jury selection used in her trial was subsequently overruled. The court finds this showing is made. After petitioner's trial, the Missouri courts began to reverse their prior approval of this method of selecting veniremen. First, in *State v. Barner,* 659 S.W.2d 326 (Mo.Ct.App.1983), the Missouri Court of Appeals held that when jurors are selected by the sheriff there exists the possibility of denial of due process to the defendant. A year later, in *State v. Bynum,* 680 S.W.2d 156 (Mo.1984), the Missouri Supreme Court held the Cole County jury selection procedures (the same procedures by which the jury which convicted petitioner was selected) were not in compliance with Missouri Revised Statutes §§ 494.080 and 495.100. Because of these decisions overruling prior precedent as to jury selection in Missouri, petitioner has met the second prong of the novelty exception as established by *Reed.* The court concludes that petitioner meets both prongs of *Reed,* and thus has established cause for the procedural default resulting from her defense counsel failing to object to the jury venire at trial.

In addition to showing cause, petitioner must also show actual prejudice resulting from the violation of her constitutional rights in order to overcome this procedural default. *Smith v. Murray,* 477 U.S. 527, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986); *Dalton v. United States,* 862 F.2d 1307, 1309 (8th Cir.1988). The court finds actual prejudice is demonstrated by the fact that the jury recommended a life sentence for petitioner despite the fact that she had no prior convictions and was not the principal actor in the crime charged. More specifically, at petitioner's sentencing, the trial judge made the somewhat remarkable statement that "[petitioner] wanted a jury trial, and she got it, and that included the punishment factor.... Now, had the jury had the benefit of the admission [7] that appeared

---

7. The admission to which Judge McHenry was referring was eluded to by her counsel in his final statement in the sentencing hearing where he said "she seems to have committed [sic] the parole people who interviewed her that she did knowingly participate, but the part she played

was only peripheral and apparently was at least if not totally, at least partly the result of coercion because of the circumstances of living with this man who had brought her under his power." Tr., Motion for New Trial, Allocution, Judgment and Sentence at 383. The "parole

in the presentence investigation, coupled with the testimony of coercion that I have heard referred to here today, it might have been a different story; but it isn't what the jury got." Tr., Motion for New Trial, Allocution, Judgment and Sentence at 380–81. He then sentenced her to life although he was not required to do so under Missouri law. The life sentence and the above statements by the trial judge make it clear that petitioner was prejudiced by the jury array.

In summary, the court finds petitioner overcomes the procedural bar, if any there be, by meeting the cause and prejudice standard established by *Sykes*.

### E. The Merits of the Jury Array Issue

■ The court has determined that there is no procedural bar to this court's hearing the merits of the jury array issue, even though the jury array was not challenged by defense counsel or at the first appeal. Accordingly, the court will now proceed to the merits of this claim.

The facts of the procedure used by the Circuit Court of Cole County in selecting the jury panel with the aid and discretion of the sheriff have already been discussed in this memorandum on pages 786–87. The court holds the selection process to be fatally flawed.

As stated earlier, the jury selection process at petitioner's trial was stipulated to be the same as in *State v. Bynum*, 680 S.W.2d 156 (Mo.1984). In *Bynum*, the Missouri Supreme Court held that up until the deputy sheriff made out the cards and kept them in the sheriff's office, the system was a "reasonable adaptation of Chapter 495 ..." but then concluded that the deputy sheriff's procedure of securing the names and panel members violated the statutes because the drawing of names was supposed to be performed by "the clerk of the board, so situated as to be unable to see the names on the cards ...," thus insuring random selection of potential jurors. *Id.* at 159. The Missouri Supreme Court stated that "there must be no opportunity for

individual intervention at any stage of the selection process." *Id.* Since petitioner's jury was selected in the exact manner as the jury in *Bynum*, the jury selection procedure at petitioner's trial violated the above-mentioned Missouri statutes and thus failed to insure an impartial and randomly selected jury.

■ This court first notes that the fact that a jury is improperly selected does not mean that the trial is per se unfair, and consequently unconstitutional. In *Russell v. Wyrick*, 736 F.2d 462 (8th Cir.1984), *cert. denied*, 469 U.S. 1219, 105 S.Ct. 1203, 84 L.Ed.2d 346 (1985), the court found that where the sheriff had hand picked jurors but was not involved in the investigation of the habeas petitioner's alleged crime, the potential for unfairness existed but did not result in an unfair jury. Conversely, where the sheriff is involved with the investigation of the accused's alleged crime and then participates in the selection of the jury, that jury is unfairly selected and consequently unconstitutional. *Anderson v. Frey*, 715 F.2d 1304, 1307–08 (8th Cir.1983), *cert. denied*, 464 U.S. 1057, 104 S.Ct. 739, 79 L.Ed.2d 198 (1984).

In the present case, this court finds that the record leaves no doubt that the Cole County Sheriff's office was involved in both the investigation of the crime and the selection of petitioner's jury. With respect to the latter, it has already been demonstrated that the sheriff's office was involved in the selection of petitioner's jury. The fact that the sheriff's office was involved in the investigation of the crime is shown by the involvement of the undercover agent Lee Downing. Downing became a confidential informant for the Cole County Sheriff's Office in October of 1981 when he went to the sheriff and told him about the alleged drug operated by Gary Erwin McCaw, petitioner's boyfriend. Trial Tr. at 310. At the time of petitioner's trial in May of 1982, Downing was a deputy sheriff and was the prosecution's chief rebuttal witness. *Id.* at 292–93. Because of Down-

---

people" counsel refers to are the authors of the "presentence investigation" referred to by Judge McHenry. The court also notes that petitioner's

counsel at the sentencing was not her defense counsel, because he failed to appear.

ing's obvious connection with the sheriff's office since October of 1981, first as a confidential informant and later as a deputy sheriff and because of the sheriff's direct involvement with the selection of the jury for petitioner's trial, the court finds that under the rule of *Anderson v. Frey,* petitioner's trial was fundamentally unfair thus denying petitioner her right to due process of law. On this basis the court grants the writ of habeas corpus and vacates the conviction.

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

A successful claim of ineffective assistance of counsel requires petitioner to show her counsel's conduct was deficient and that it so prejudiced petitioner as "to undermine confidence in the outcome" of the trial. *Strickland v. Washington,* 466 U.S. 668, 696, 104 S.Ct. 2052, 2069, 80 L.Ed.2d 674 (1984); *Byrd v. Armontrout,* 880 F.2d 1, 4 (8th Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 1326, 108 L.Ed.2d 501 (1990). More specifically, petitioner must make a two-part showing: First, she must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the sixth amendment," *Strickland* 466 U.S. at 687, 104 S.Ct. at 2064, and second, counsel's performance prejudiced petitioner to the point that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* Analysis of an ineffective assistance of counsel claim mandates that the reviewing court indulge the presumption that the petitioner's counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690, 104 S.Ct. at 2066. Consequently, petitioner must identify acts or omissions of counsel that are not the result of reasonable professional judgment and these acts or omissions must be con-

sidered in light of all the surrounding circumstances. *Id.* Also the prejudice demonstrated must be sufficient, that is, petitioner must show that but for her deficient representation the result would have been different. *Id.* at 694, 104 S.Ct. at 2068.

As stated earlier, petitioner asserts thirty-four grounds in support of her claim, and twenty-six of these grounds support her claim of ineffective assistance. Of these twenty-six grounds, the court has determined that ten have been properly exhausted at the state court level, and may now be adjudicated on the merits by this court. Memorandum and Order of April 2, 1987 at 10. The remaining fourteen grounds have been exhausted,[8] but are procedurally barred.[9]

The ten grounds which petitioner has exhausted and are now properly before this court can be categorized into counsel's personal shortcomings, trial strategy and trial preparation. Each of these categories will be explored separately.

■ Counsel's personal shortcomings are alleged in the petition by the following: (1) Petitioner received ineffective assistance of counsel in that defense counsel was suffering from Alzheimer's disease at the time of trial; (2) Defense counsel was often confused during the trial and had difficulty remembering things, even things he had discussed with the prosecutor the day before; (3) Defense counsel objected to testimony as to an item seized from the vehicle in which petitioner had been riding prior to the arrest, insisting he had not been given the information in discovery. After assurances by the prosecutor that the information had been provided and a conference in chambers was held off the record, defense counsel withdrew the objection; (4) At the close of the first day of testimony, the prosecutor wanted to endorse an additional witness. Defense counsel said he had no

---

**8.** In this court's Memorandum Opinion and Order of May 31, 1988, the court determined that two of the grounds set forth at the April 1987 evidentiary hearing, number 11—defense counsel failed to make an opening statement and number 14—defense counsel was suffering from Alzheimer's disease during the trial—had al-

ready been raised in the second amended petition.

**9.** A more thorough discussion of the procedurally barred grounds will be explored in a later section of this memorandum.

objection to the witness testifying. The next morning when the witness was called, defense counsel objected. The judge recalled the conversation to defense counsel who still had no recollection of it; (5) Defense counsel forgot that he had questions to ask of one of the State's witnesses. The witness had been finally excused and the next one was taking the stand when defense counsel remembered that he did have questions; (6) Defense counsel nearly missed his opportunity for surrebuttal because his mind was elsewhere; (7) As defense counsel was not a capable, effective advocate for petitioner Deborah Pilchak, she was prejudiced in that her trial was not reliable and did not produce a just result.

The above grounds attempt to demonstrate defense counsel was mentally impaired at the time of petitioner's trial and therefore was not functioning as counsel guaranteed by the sixth amendment. The court notes, however, that these grounds do not amount to ineffective assistance of counsel without a showing of actual prejudice. *Strickland,* 466 U.S. at 690, 104 S.Ct. at 2066; *see also, Smith v. Ylst,* 826 F.2d 872, 976–77 (9th Cir.1987), *cert. denied,* 488 U.S. 829, 109 S.Ct. 83, 102 L.Ed.2d 59 (1988) (counsel's mental illness and subsequent replacement during trial did not constitute ineffective assistance of counsel when defendant did not show how counsel's action prejudiced him). Petitioner has failed to demonstrate actual prejudice from the above allegations, that is, petitioner has not shown that but for the above showings of mental impairment of her defense counsel, the result of her trial would have been different.

■ In consideration of defense counsel's trial stategy, petitioner asserts that (1) defense counsel reserved the right to make his opening statement at the beginning of his case, he failed to do so, and no further mention was made of an opening statement on behalf of Deborah Pilchak; and (2) defense counsel failed to object to the testimony of petitioner's involvement in previous drug sales, although later at the hearing of the first motion, defense counsel testified that he had felt it was important

to raise his objections to the evidence. The court finds the above allegations do not amount to ineffective assistance of counsel.

The decision to forgo an opening statement has been held to be a tactical decision within the bounds of proper trial strategy. *United States v. DeCoster,* 624 F.2d 196, 214 (D.C.Cir.1976), *cert. denied,* 444 U.S. 944, 100 S.Ct. 302, 62 L.Ed.2d 311 (1979). The failure to object at trial is also considered a tactical decision as part of the lawyer's trial strategy. *See Reed v. Ross,* 468 U.S. 1, 13–14, 104 S.Ct. 2901, 2908–09, 82 L.Ed.2d 1 (1984) ("In general, therefore, defense counsel may not make a tactical decision to forgo a procedural opportunity—for instance, an opportunity to object at trial or to raise an issue on appeal—and then, when he discovers that the tactic has been unsuccessful, pursue an alternative strategy in federal court.")

In summary, although petitioner's counsel failed to make an opening statement and failed to object to evidence of petitioner's alleged involvement in a previous drug sale, these allegations are not sufficient to establish ineffective assistance of counsel because these omissions are considered trial strategy.

■ Petitioner also asserts that the lack of trial preparation on the part of her counsel as a basis for her claim of ineffective assistance of counsel. More specifically, she states that fact that defense counsel's file was completely devoid of any trial preparation demonstrates that she was denied her right to effective assistance of counsel. The court agrees.

■ In *Kimmelman v. Morrison,* 477 U.S. 365, 387, 106 S.Ct. 2574, 2589, 91 L.Ed.2d 305 (1986), the Supreme Court held that the total failure on the part of defense counsel to conduct pretrial discovery amounted to ineffective assistance of counsel. In the instant case, the court acknowledges that counsel's incomplete file alone would be insufficient to establish the total failure to conduct pretrial discovery. However, the court has heard testimony to the effect that petitioner's counsel did not conduct any pretrial discovery. This was evidenced by the fact that defense counsel's

file was devoid of any trial preparation. More specifically, at the evidentiary hearing conducted by this court in April of 1987, Mr. James Snider testified to the fact that five days before trial, defense counsel gave him the file and it contained no pretrial discovery.[10] More specifically, when asked what the file contained when he saw it five days before petitioner's trial, Mr. Snider replied, "Basically they [the documents in the file] are police reports. There are results of some criminal tests, I think probably the cocaine analysis. There is a highway patrol, a couple of officer's reports, several Jefferson City Police Department reports and a copy of—it must be a transcription of an interview with Bobby Roark who was at the time the investigator for the public defender's office." Tr., Evidentiary Hearing of April 9–10, 1987 at 155.

Additionally, at the evidentiary hearing conducted on January 26, 1990 in Kansas City, Mr. Roger Brown, petitioner's Rule 27.26/29.15 counsel, stated that when he went to see Mr. Snider before the first evidentiary hearing to see if Mr. Snider had anything that might be of use to petitioner, Mr. Brown stated that when the file was found "it [the file] did two things. One, he found the things [defense counsel] had given him, the records, [his] complete file which consisted of very, very few papers." Tr., Evidentiary Hearing of January 26, 1990 at 34. More specifically, Mr. Brown testified that the file was "made up of only four or five pages." Id. at 35.

The court notes that defense counsel testified at the hearing of the first motion that he did in fact conduct pretrial discovery. Memorandum Decision of First Motion at 3. However, this court had the experience of hearing the testimony of defense counsel and of seeing him testify concerning pretrial discovery at the evidentiary hearing in

April of 1987, and the court finds this witness lacked credibility. On the other hand, the court finds the testimony of Mr. Jim Snider and Mr. Roger Brown to be highly credible. Therefore, this court finds the evidence of defense counsel's incomplete file and the testimony of two competent attorneys demonstrates that petitioner's defense counsel did not conduct pretrial discovery.

Petitioner must also show that but for counsel's failure to conduct pretrial discovery, the result would have been different. *Kimmelman*, 477 U.S. at 392, 106 S.Ct. at 2592. Petitioner makes this showing. The court finds that had defense counsel conducted pretrial discovery, specifically by deposing informant/deputy sheriff Lee Downing,[11] defense counsel would have been aware of Downing's very damaging rebuttal testimony that the jury would hear if petitioner took the stand. Defense counsel, however, never even discussed with petitioner the advisability of taking the stand, and the ominous prospect of opening the flood gates of rebuttal testimony by Downing and as a result petitioner elected to testify. Tr., Evidentiary Hearing of April 1987 at 107.

Because petitioner testified, Downing was put on the stand as a rebuttal witness. The result of this rebuttal testimony was that much of petitioner's direct testimony was contradicted and she was found guilty and sentenced to life. That being the result is demonstrated by the jury foreman's testimony at the April 1987 evidentiary hearing.

Question: Mr. Browning, do you recall that testimony that I have read from Mr. Downing's testimony?

Answer: Yes

---

10. Mr. Snider was employed as an attorney for the President of the University of Missouri at the time of this hearing. Snider's connection with petitioner's case was that five days before trial, petitioner called him to represent her. Mr. Snider agreed to do so, provided he could get a continuance. He inquired about this, but the judge denied the request. Tr., Evidentiary Hearing of April 9–10, 1987, pp. 158–60.

11. Defense counsel specifically stated that he did not depose Mr. Downing. Tr., Evidentiary Hearing of April 1987 at 200. The court also finds that even though defense counsel stated that he interviewed Downing at length, *id.* at 191, the file did not contain any notes of such an interview.

Question: Mr. Browning, did that have an effect on you in your deliberation as to guilt and sentencing of Miss Pilchak?

Answer: Yes

Question: Could you tell me what effect it would have?

Answer: I think as far as I am concerned it established that she had participated in the cocaine distribution and cutting and sniffing and so forth connected with the cocaine business.

Question: Did it have a distinct effect on your determination, you determined she was in fact guilty?

Answer: Yes

Question: Did it have a distinct effect on your determining the amount of her sentence?

Answer: Yes.

Tr., Evidentiary Hearing of April 1987 at 77–78.

Because of the foregoing testimony, petitioner has demonstrated that but for defense counsel's failure to conduct pretrial discovery and because of his inadequate counseling with her on the consequences of testifying, the result would have been different. Thus, pursuant to *Kimmelman,* the court finds the assistance rendered petitioner by her trial counsel was constitutionally deficient. Accordingly, the habeas relief requested is granted on that ground.

In summary, the court first finds that the personal shortcomings of defense counsel shown by various instances of alleged mental impairment do not amount to ineffective assistance of counsel because petitioner failed to show actual prejudice. The court also finds that defense counsel's failure to make an opening statement and his failure to object to testimony concerning petitioner's alleged involvement in previous drug sales do not amount to ineffective assistance of counsel because these actions are trial tactics. However, the court finds that counsel's file being devoid of evidence of any pretrial discovery, counsel's failure to warn petitioner of the hazards of the possible rebuttal testimony of Downing, and the testimony taken by this court regarding defense counsel's lack of pretrial discovery demonstrate he did not conduct pretrial discovery, and that failure amounts to a denial of effective assistance of counsel.

## V. INEFFECTIVE ASSISTANCE OF COUNSEL PROCEDURALLY BARRED GROUNDS

### A. *Introduction*

By way of review and as stated earlier, petitioner commenced her federal habeas action on August 13, 1986 and was granted leave to amend her petition on February 10, 1987. The court ordered a hearing on April 2, 1987, it being clear to the court that further evidence was needed and that an evidentiary hearing should be held. As a result of this hearing the court determined that petitioner was presenting new grounds in support of her claim of ineffective assistance of counsel which had not been presented to the state court. This was when, as previously mentioned, petitioner was given the option by this court to dismiss unexhausted grounds or return with them to state court. *Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). The state circuit court and court of appeals both ruled that the petition was successive and thus the "new" grounds asserted were procedurally barred. *Pilchak v. State,* 773 S.W.2d 867 (Mo.Ct.App. 1989). Thus, this court may not reach the merits of these subsequent grounds unless petitioner can demonstrate that a fundamental miscarriage of justice has occurred, *Murray v. Carrier,* 477 U.S. 478, 485, 106 S.Ct. 2639, 2643, 91 L.Ed.2d 397 (1986), or can show cause for the procedural default and resulting prejudice at the first motion and at the first appeal. *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977).

### B. *Fundamental Miscarriage of Justice*

In 1867, the writ of habeas corpus was extended to state prisoners "in custody in violation of the Constitution of laws or treaties of the United States." 28 U.S.C. § 2254(a). The Great Writ as applied to state prisoners, however, did not attract

much attention in the federal courts until the Supreme Court's decision in *Frank v. Mangum*, 237 U.S. 309, 35 S.Ct. 582, 59 L.Ed. 969 (1915), in which the Supreme Court, describing the federal courts' habeas powers in broad terms, stated that federal review should be provided whenever the state "supplying no corrective process, ... deprives the accused of life or liberty without due process of law." *Id.* at 335, 35 S.Ct. at 590. Nearly forty years later in *Brown v. Allen*, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469 (1953), the Court further expanded the writ by holding that if state remedies have been exhausted, a state prisoner could petition a federal court for adjudication of a constitutional claim even when the state corrective process was adequate. *Id.* at 459, 73 S.Ct. at 408. From *Brown* until the 1970's, the courts continued to expand the writ. C. Whitehead, C. Slobogin, *Criminal Procedure* 831–32 (1986).

In the mid 1970's, however, retraction of the writ began with the Burger Court. This development was based on the Court's desire to promote comity between the federal and state systems by according judgments made by the latter system's greater respect. This comity-federalism rationale was solidified in the landmark opinion of *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), when the court held that if a petitioner fails to raise a federal constitutional claim at the state court level, the cause of that failure and prejudice resulting from it must be shown before the federal court will hear the claim. However, this requirement is not unwavering. Federal courts retain the power to hear and decide federal constitutional claims raised for the first time in the habeas application when the absence of such an adjudication would result in a miscarriage of justice. *Sykes* 433 U.S. at 91, 97 S.Ct. at 2508.

In *Murray v. Carrier*, 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986), the Supreme Court refined the miscarriage of justice standard by stating:

[A]s we also noted in *Engle* [*v. Isaac*], "[in appropriate cases]" the principles of comity and finality that inform the concepts of cause and prejudice "must yield to the imperative of correcting a fundamentally unjust incarceration." 456 U.S. [107], at 135, 102 S.Ct. [1558], at 1576 [71 L.Ed.2d 783 (1982)]. We remain confident that, for the most part, "victims of a fundamental miscarriage of justice will meet the cause-and-prejudice standard." *Ibid.* But we do not pretend that this will always be true. Accordingly, we think that in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default.

*Id.* at 495–96, 106 S.Ct. at 2649.

The Supreme Court discussed the miscarriage of justice standard also in *Smith v. Murray*, 477 U.S. 527, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986). In this opinion, the Court apparently supplementing the actual innocence standard of *Murray v. Carrier*, held there was nothing "fundamentally unfair" about "enforcing procedural default rules in cases devoid of any substantial claim that the alleged error undermined the accuracy of the guilt or sentencing determination." *Id.* at 539, 106 S.Ct. at 2668. The court indicated that a substantial claim of a constitutional violation at sentencing would occur in a situation where the alleged error "precluded the development of true facts or resulted in the admission of false ones." *Smith v. Murray*, 477 U.S. at 538, 106 S.Ct. at 2668. Accordingly, in such a situation, a fundamental miscarriage of justice would result if a federal court could not hear these constitutional claims because they had been previously held to be procedurally barred.

 While the fundamental miscarriage of justice standard clearly applies to sentencing errors in capital cases, *Smith v. Murray*, 477 U.S. 527, 537–38, 106 S.Ct. 2661, 2668, 91 L.Ed.2d 434 (1986), this court concludes that it can apply in non-capital cases as well under the proper circumstances. This is such a case.

 The court finds that constitutional violations, that is, petitioner's fifth, sixth

and fourteenth amendment rights to an impartial jury and effective assistance of counsel, occurred at the sentencing phase of petitioner's trial because of a jury tainted by the selection process, *see, infra,* at 786–92, and a lawyer insidiously disabled by an undiscovered tragic disease. Those violations of petitioner's constitutional rights undermined the accuracy of the sentencing determination. This is demonstrated by the trial judge's ironic comments at sentencing, in which he stated "[petitioner] wanted a jury trial, and she got it, and that includes the punishment factor." Tr., Motion for New Trial, Allocution, Judgment and Sentence, at 380. Further, the trial judge observed that "had the jury had the benefit of the admission that appeared in the presentence investigation, coupled with the testimony of coercion that I have heard referred to her today, it might have been a different story; but it isn't what the jury got." *Id.* at 380–81. In view of the foregoing statements, the court finds that the cause and prejudice showing required by *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), must yield to the "imperative of correcting a fundamentally unjust incarceration." *Engle v. Issac,* 456 U.S. at 135, 102 S.Ct. at 1575. Accordingly, this court will now consider petitioner's grounds that have been previously ruled procedurally barred by the state court. *Pilchak v. State,* 773 S.W.2d 867 (Mo.Ct.App.1989).

These grounds for relief are as follows:

1. Defense counsel (a) gave petitioner no pretrial advice, (b) did not explain to her the nature of the charges brought against her, (c) did not explain the possible sentences on those charges, and (d) did not explain the likelihood of conviction versus acquittal;

2. Defense counsel did not counsel with petitioner at all until five-and-one-half days prior to trial;

3. Defense counsel (a) failed to enter into plea negotiations on petitioner's behalf, (b) did not explain to petitioner the advantages and disadvantages of going to trial versus accepting a plea bargain,

(c) did not give petitioner his assessment of the evidence against her and the applicable law, (d) did not explain what effect the particular judge assigned to her case may have on the case, and (e) did not explain what effect a Cole County jury may have on her case;

4. Defense counsel did not explain to petitioner the potential benefits and risks of having her case tried in another county;

5. Defense counsel did not adequately prepare the law and the evidence, and did not make an orderly presentation of petitioner's defenses to the jury;

6. Defense counsel did not properly voir dire the jury panel;

7. Defense counsel failed to make a proper closing argument;

8. Defense counsel failed to cross-examine the prosecution's witnesses properly;

9. Defense counsel did not appear at the sentencing hearing to offer mitigating evidence;

10. Defense counsel prejudiced petitioner by not insisting to the court that she be tried while she was pregnant and by failing to resist a continuance of the trial until after her pregnancy;

11. Defense counsel did not adequately prepare and make use of pretrial discovery, both discovery supplied by the prosecutor and discovery defense counsel could have developed on his own;

12. Defense counsel did not move for a directed verdict at the close of the state's case;

13. Defense counsel failed to advise petitioner on the ramifications of her taking the witness stand; and

14. Defense counsel did not adequately prepare petitioner to testify.

Each of the above-listed grounds attempts to demonstrate petitioner was denied her sixth amendment right to effective assistance of counsel. In order to establish she was denied this right, she must show that her attorney "failed to exercise the customary skill and diligence that a reasonably competent attorney would perform under similar circumstances." *Harris v. Housewright,* 697 F.2d 202, 204 (8th Cir.

1982). Petitioner must also demonstrate she was actually prejudiced by counsel's ineffectiveness.[12] *Id.* The court finds when these grounds are viewed cumulatively, defense counsel's performance was clearly below the level of "professional skill customary for competent counsel similarly situated." *Id.* at 206.

After careful review of the trial transcript, the transcript of the hearing of the first motion, the transcript of the first appeal, the transcript of the evidentiary hearings in May and April of 1987 and the transcript of the evidentiary hearing in January of 1990, the court finds that petitioner has established the foregoing grounds. Therefore, she has proven that her defense counsel "failed to perform with the degree and skill with which reasonably competent counsel would perform under similar circumstances." *Harris v. Housewright*, 697 F.2d at 211. Petitioner must now demonstrate she was actually prejudiced by her defense counsel's sub-par performance. The court finds this showing is made because the jury recommended a life sentence for petitioner despite the fact that petitioner had no prior convictions and under circumstances where the defendant was not the principal actor in the crime charged.

The previously mentioned statements by the trial judge indicate that the accuracy of the sentence was effected by the jurors' lack of complete information. Therefore, this court finds that a fundamental miscarriage of justice would result if this court failed to address the merits of the procedurally barred grounds in Ms. Pilchak's habeas corpus petition.

In summary, the court finds that even though the earlier enumerated grounds were held procedurally barred by the state court, this court may address the merits of these grounds since a fundamental miscarriage of justice would result if the court did not do so. The court finds that these grounds, established by the record, demonstrate that defense counsel's overall performance and the cumulative effect of the multiple and egregious errors denied petitioner effective assistance of counsel. This simply is not fair. Accordingly, the court grants the petition on these grounds as well.

C. *Cause and Prejudice for Procedural Default at the First 27.26 Motion and Appeal*

As noted earlier, the court determined after the evidentiary hearing held in April and May of 1987 that petitioner was asserting new grounds for relief and that these grounds had not been presented to the state court. Petitioner thereafter went back to the state court where a determination was made that the petition was successive and ruled the grounds were procedurally barred. If petitioner had not demonstrated that a fundamental miscarriage of justice would result if this court did not consider the procedurally barred grounds, petitioner would have to show cause and prejudice for the failure to raise these grounds at either the first motion or the appeal of her first motion in order for this court to rule on the merits of these grounds. The court notes that the only avenue available to petitioner to show cause for these procedural defaults is that petitioner was rendered ineffective assistance of counsel at these levels. Prejudice is shown by the fact that petitioner, a first offender with a passive role in the offense, was given a life sentence.

The court first notes that it appears respondent is asserting that "cause" cannot be established by a claim of ineffective assistance of post-conviction-collateral review counsel. This position is diametrically contrary to *Shaddy v. Clarke*, 890 F.2d 1016 (8th Cir.1989), where the court says: "A petitioner has no sixth amendment right to effective assistance of counsel during a post-conviction proceeding because no sixth amendment right to counsel attaches in collateral attacks upon convictions. *See Pennsylvania v. Finley*, 481 U.S. 551, 107 S.Ct. 1990, 1993, 95 L.Ed.2d 539 (1987). Nevertheless, although ineffective assistance of counsel during post-conviction pro-

---

**12.** The standard for ineffective assistance of counsel was more thoroughly discussed earlier in this Memorandum Opinion at page 792.

ceedings cannot provide grounds for habeas relief, *it can constitute cause under Wainwright, thus avoiding the procedural bar. Harper v. Nix*, 867 F.2d 455, 457 (8th Cir.1989), *cert. denied,* —— U.S. ——, 109 S.Ct. 3194, 105 L.Ed.2d 702 (1989)." (Emphasis added.)

Respondent further asserts that even if cause for the procedural default at the post-conviction appeal stage could be shown by ineffective assistance of counsel, petitioner has not exhausted this claim at the state level and therefore this court is premature in considering the cause and prejudice question. This argument is rejected because the total record in this agonizingly extenuated matter leads this court to conclude that it would be futile to require petitioner to return to state court at this point. Missouri Supreme Court Rule 29.15 strictly prohibits the filing of successive petitions for post-conviction collateral review. Petitioner returned to state court after the evidentiary hearing in April of 1987 and the final word from the Missouri Court of Appeals was that the petition was successive and thus procedurally barred. *Pilchak v. State*, 773 S.W.2d 867 (Mo.Ct. App.1989). Therefore, this court has no doubt that it would be an exercise in futility to require petitioner to return to state court with her claims of ineffective assistance of counsel at the post-conviction-collateral review stage. Thus, the court will now consider whether cause and prejudice for the procedural defaults are established by ineffective assistance of counsel.

As stated earlier, petitioner raised a number of grounds for habeas relief at the evidentiary hearing in April and May of 1987. In the court's May 31, 1988 Memorandum Opinion and Order, petitioner was directed either to return to state court to exhaust these new grounds or delete them from her petition. Petitioner returned to state court and the new grounds were found to be procedurally barred.[13]

The court does not find ineffective assistance of counsel was rendered by either petitioner's counsel at the first motion or at the first appeal. In order to show ineffec-

tive assistance of counsel, petitioner must show both that her counsel's performance fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's performance, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. at 694, 104 S.Ct. at 2068. The Supreme Court has clearly held that counsel's deliberate decision not to pursue particular grounds on appeal in favor of other grounds is not ineffective assistance of counsel. *Smith v. Murray*, 477 U.S. 527, 537, 106 S.Ct. 2661, 2667, 91 L.Ed.2d 434 (1986). At the evidentiary hearing conducted on January 26, 1990, both counsel for petitioner at the first motion and at the first appeal stated they chose the grounds they asserted as part of their appellate strategy. Tr., Evidentiary Hearing of January 26, 1990 at 37, 44–46, 53–55. Accordingly, the court does not find petitioner was rendered ineffective assistance of counsel at these levels.

## VI. CONCLUSION

By reaching the conclusion that the writ should be granted, this court does not mean either to express or imply any criticism either of petitioner's defense counsel or of the bench or bar of Cole County. Trial defense counsel had practiced law honorably and capably for most of the twenty-one years preceding the trial of petitioner's case. He practiced in the St. Louis area and later he became a very effective assistant attorney general in Jefferson City. It is clear now that at the time of the *Pilchak* trial he was suffering the substantial effects of the onslaught of a mentally debilitating disease. He did not know until 1983 what the disease was but the evidence establishes that he had been ill in San Francisco some time prior to the Pilchak trial and that the symptoms of that illness were consistent with Alzheimer's.

In like manner, this opinion should not be construed as a criticism of Judges McHenry or Conley for failing to notice the symptoms of this disease and how they were

---

**13.** The grounds which were deemed procedurally barred are listed on page 797.

affecting counsel's performance. The course of this disease is slow and the first occurrence of symptoms eight or nine years ago which we are now able to recognize was not nearly so noticeable as they were evolving day to day.

The court does question the appropriateness of the attitude of the assistant attorney general who represented respondent. This case has been unnecessarily extended by the obdurate refusal of that practitioner to take a balanced approach to this matter and his refusal to admit to even the slightest possibility of error in the case. Perhaps after he has tried a few jury cases from beginning to end (he has tried none, Tr., Evidentiary Hearing of January 26, 1990 at 112), he will appreciate that there is some wisdom in compromise. For the nonce, this court must repair these wrongs as it sees them with the Great Writ. The court is not uninfluenced by the fact that the man who was principally responsible for the commission of these crimes and who coerced petitioner into participating in a criminal offense for the first time in her life is now free.

In summary, the court concludes that petitioner is entitled to appropriate federal habeas corpus relief. First, petitioner has demonstrated that her fifth, sixth and fourteen amendment rights were violated because of the Cole County Sheriff's office's direct involvement with both the selection of her jury and the investigation and prosecution of her offense. Second, petitioner has demonstrated that she was denied her sixth and fourteenth amendment rights to effective assistance of counsel because the evidence showed that her defense counsel failed to conduct pretrial discovery. Third, petitioner demonstrated that she was denied her sixth and fourteenth amendment rights to effective assistance of counsel by demonstrating that the cumulative effect of her trial counsel's performance was below the level of skill customary for competent counsel similarly situated.

Accordingly, it is

ORDERED that petitioner is entitled to the federal habeas relief prayed for on both the separate and alternative grounds above-stated. The writ shall not issue for thirty days in order to afford the state of Missouri, through its Attorney General, the opportunity to have petitioner's conviction set aside or declared to be invalid and to decide whether to begin new trial proceedings. It is further

ORDERED that if no such trial proceedings are begun within thirty days from the date of this order, the writ shall issue. It is further

ORDERED that if it is determined to try petitioner again she be afforded appropriate opportunity under state law for a detention hearing to determine if she should be free on bond pending trial. It is further

ORDERED that the Attorney General shall keep this court advised of all proceedings that may be consistent with the stay of the issuance of the writ. It is further

ORDERED that the thirty-day period above-provided may be enlarged upon written application of the Attorney General for good cause shown before the expiration of the thirty-day period.