STATE of Missouri, Respondent,

v.

Marvin C. BYNUM, Appellant.

No. 66340.

Supreme Court of Missouri,
En Banc.

Dec. 3, 1984.

John Edward Cash, Willard B. Bunch, Kansas City, for appellant.

John Ashcroft, Atty. Gen., Michael H. Finkelstein, Asst. Atty. Gen., Jefferson City, for respondent.

BLACKMAR, Judge.

The defendant was convicted of attempted rape (§§ 566.030, 564.011, RSMo 1978) and was sentenced as a persistent sexual offender to a term of 30 years. The Missouri Court of Appeals, Western District, reversed and remanded for a new trial, finding irregularities in the jury selection process. We granted transfer and expedited the case, primarily to consider the interrelation of § 494.225, RSMo 1978, which permits the electronic storage of jury lists, and the specific statutes relating to jury selection (in this case, Chapter 495, RSMo). We take the case as on initial appeal and reverse.

I.

The defendant challenges the sufficiency of the evidence to support the verdict. This ground, if established, would dispose of the whole case and preclude retrial.

*Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978). We conclude, however, that the evidence was sufficient.

The only complaint is that, approximately two hours after the offense was reported, the victim viewed the defendant in a one-on-one observation through a one-way glass. It is argued that this procedure was so suggestive that it tainted all subsequent identification, so that there was no proper identification and no other evidence linking the defendant to the crime. One-on-one viewings, however, are not necessarily improper. Sometimes the wise course is to bring the complainant together with the victim as soon as possible, so that the victim may be seen and either charged or released. *State v. Hamblin,* 448 S.W.2d 603 (Mo.1970); *State v. Dodson,* 491 S.W.2d 334 (Mo. banc 1973); *Simms v. State,* 568 S.W.2d 801 (Mo.App.1978). The evidence on pretrial motion to suppress showed that the defendant was the only black man available at the police station. We find no error in the overruling of the motion to suppress. The identification evidence at trial was received without objection and was available to the jury, which could accept or reject it.

II.

The defendant filed a "motion to quash the jury panel," which was brought on before trial and developed by evidence. Violations of the Sixth Amendment, Article I, § 18(a) of the Missouri Constitution, and Missouri statutes were alleged in general terms, but the only specific complaint in the motion was that "defendant is informed, and believes that the jurors actually summoned for duty in his trial are largely supplied by the sheriff of Cole County or his deputy."

Cole County is a county of the second class, and jury selection is governed by Chapter 495, RSMo 1978. Section 495.050 establishes a jury commission composed of the circuit judges and circuit clerk. The other material provisions are as follows:

495.070. After having prepared the list as aforesaid, the board shall cause to be written each name, so on the list, on a stiff card, and said cards shall be of the same kind and size. The cards to be placed in a wheel or box, which shall be provided for that purpose, and before any drawing shall be had therefrom, the cards in each wheel or box shall be thoroughly mixed; said wheel or box shall be kept securely locked and retained constantly under the control of the board.

495.080. Whenever any court to which sections 495.040 to 495.190 may apply shall desire a panel of jurors, said court, or the judge in vacation, shall so order and designate in said order the number of jurors so desired; whereupon the clerk of said board, so situated as to be unable to see the names on the cards, and in the presence of one or more members of the jury commission, shall draw that number of cards from the wheel or box. The clerk of the jury commission shall thereupon issue a venire for the jurors so drawn and deliver the same to the sheriff, which venire shall designate the court or division of the court in which said panel is desired. In the event of the sickness or absence of the clerk of the commission the judge ordering the jury shall designate any regular deputy circuit clerk to act in his stead.

\* \* \* \* \* \*

495.100. Whenever any division of said court shall desire a panel of jurors for the trial of a cause, the sheriff in charge of the full panel shall send to the division requiring such jurors such number as such division may order, and when the twelve are selected and sworn to try the cause, the remaining jurors shall return to the sheriff in charge of the full panel.

In 1971, the General Assembly adopted § 494.225, RSMo 1978, a supervising provision reading as follows:

Any other provisions of chapters 494, 495, 496, 497, 498 and 499, RSMo, notwithstanding, the board of jury commissioners, or jury commission board, or board of jury supervisors or jury commissioner as the case may be may cause to be maintained the list of names and addresses of qualified jurors as required by law by storing them upon magnetic tape, cores, discs, or similar devices which are a part of a data processing system and may cause general panels of jurors to be drawn therefrom by designating a suitable method of random selection so that the names drawn for any general panel of jurors shall be thoroughly mixed; and summons for jury duty shall be served by the sheriff, and the sheriff may use the United States mail to accomplish service. Actual receipt of summons by mail by the person summoned for jury duty or by some member of his family over the age of fifteen years shall be lawful service.

The evidence showed that the procedures actually used in selecting the jury at the time of defendant's trial were as follows:

(1) The reservoir of jurors is the voter registration list maintained in computer storage by the county clerk. Approximately every six months the jury commission requests a list of 750 jurors. The deputy county clerk in charge of the computer operation "instructs" the computer to make a random selection of names [1] sufficient to fill the request. The list is then sent to the circuit clerk.

(2) The circuit clerk's office mails questionnaires to the persons on the list. The majority of the questionnaires are not completed. Some are returned by the post office, marked "deceased" or "moved," and some are simply not mailed back. Some addressees return the questionnaires with various excuses, which are considered by the judges.

---

1. The total registration figure is divided by the number of jurors requested, to determine the proportion of names on the list to be selected for jury service. Thus, if there are 4,500 registered voters and 750 names of jurors are desired, the computer would be instructed to retrieve every sixth name.

(3) A list of jurors who have returned their questionnaires and are designated for service is delivered to the sheriff. A deputy mails a summons to each name on the list (§ 494.255). The summons does not command appearance at any particular time, but simply advises the addressee that he or she is subject to call for jury service. The deputy sheriff makes out cards for each juror summoned and keeps them in his possession.

(4) When jurors are needed for a trial the deputy sheriff shuffles the cards and starts calling the jurors, continuing until sufficient jurors are located. He notes the fact of service on a juror's card and, in picking future juries, makes a conscious effort to distribute the burden of jury service by passing over those who have had substantial service.

 The defendant claims departures from the statutory procedure of sufficient moment to require reversal of the conviction. Before dealing with these, a few general observations are in order. The purpose of the jury selection statutes is to provide a jury pool containing a fair cross section of the adult population, with random selection of jurors from that pool, all in accordance with the requirements of the federal and state constitutions. There is a strong presumption that the jury tendered at the outset of the trial has been properly selected. One who would challenge the jury panel must do so before trial, by pleading and proving fatal departures from the basic procedural requirements. A defendant cannot stand trial, hoping for acquittal, and then challenge the selection of the jury which convicts. Even so, there is a degree of tolerance, and a panel will be held to be improperly constituted only for substantial reasons.[2]

The defendant, at the pretrial hearing, developed three basic challenges to the jury selection which are briefed on appeal.

The only one specifically assigned in the written motion was that of improper participation by the sheriff in the selection process. Further complaint is made, (1) that no jury list containing a minimum of 3,500 names as required by § 495.060 was prepared, in that the list from which jurors were actually drawn contained only 255 names and, (2) following the drawing of jurors and return of questionnaires, there was no effort to make sure that each township was proportionately represented. Because these claims were demonstrated by a record made before trial, we consider them.

In determining the issues, the provisions of § 494.225 assume paramount importance. This supervening section permits the use of modern data processing equipment in the selection of juries. It is designed to provide economies by eliminating unnecessary labor while at the same time preserving the random selection of jurors from a fair cross section of the population.

 We conclude that, under § 494.-225, the computerized voter registration list may serve as the "jury list" prescribed by § 495.060. Even though some registered voters may not meet the statutory qualifications of jurors,[3] we are confident that the great majority of registered voters are also qualified jurors. The relatively few who are not may easily be eliminated at later stages, so long as random selection is maintained. The record does not show the total registration, but we note from the Official Manual that 21,175 votes were cast in Cole County for United States Senator in the 1982 general election.[4] We hold, contrary to the conclusion of the Court of Appeals, that it is not necessary to purge the stored voter registration list of unqualified jurors prior to the random selection of persons to whom jury questionnaires are sent.

 Nor has the defendant demonstrated that the 255 qualified jurors select-

---

2. *See State v. McGill,* 510 S.W.2d 782 (Mo.App. 1974) and *State v. Tyler,* 587 S.W.2d 918 (Mo. App.1979).

3. Sections 494.010 and 494.020, RSMo 1978.

4. Unofficial figures show that 27,068 votes were cast for President and Vice President in Cole County in 1984.

ed from the returned questionnaires are not distributed proportionately among the several townships of Cole County. The suggestion that the registered population of Jefferson City is more fluid than that of the surrounding area is speculative. One complaining of disproportion among townships must support the claim by evidence.

We conclude that the procedures in Cole County up to the point at which the deputy sheriff calls particular jurors represent a reasonable adaptation of the provisions of Chapter 495 to the extensive permission of § 494.225 and that there is no showing that these procedures did not produce a random selection of jurors from a fair cross section of the community.

We reach a different conclusion as to the deputy sheriff's procedure. We expressly reject the state's argument that the sheriff has discretion as to the persons actually summoned. It is the sense of §§ 495.080 and 495.100 that the sheriff's functions are purely ministerial. The drawing is supposed to be performed by the "clerk of [the] board," so situated as to be unable to see the names on the cards...." Here a deputy sheriff made the selection, and, by his own testimony, gave some attention to the names on the individual cards. What is more important, furthermore, was that he was in a position to make individual selections. The sheriff should be limited to summoning jurors from the list supplied by the clerk's office. If there is to be a designation of the order of calling jurors, it must come from the clerk. There must be no opportunity for individual intervention at any stage of the selection process.

The case is not so aggravated as *State v. Gresham,* 637 S.W.2d 20 (Mo. banc 1982), in which the jury commissioners actually evaluated the attitudinal predisposition of prospective jurors before approving them for service, but the deputy sheriff's handling of the cards provides a similar opportunity and must be condemned. Also supportive are *State v. Rouner,* 333 Mo. 1236, 64 S.W.2d 916 (1933) and *State v. McGoldrick,* 361 Mo. 737, 236 S.W.2d 306 (1951), in which the judges of the county court participated in an unauthorized manner in the selection of jurors.

The deviations demonstrated by the evidence require reversal, in accordance with the defendant's properly presented claim of error. In so holding, we make no intimation that the sheriff made any attempt at improper personal selection of jurors, and we find no constitutional infirmity in the procedures prevailing in Cole County. Our holding is not authority for disturbing the result in any case in which the array was not challenged prior to trial.

III.

Trial error is asserted because a police officer was asked on redirect examination, "was there any doubt about the defendant's guilt," and answered, "no." The state claims that the question was properly retaliatory to the defendant's intimation, during cross-examination, that the police had released the defendant after an initial identification by the victim because they did not believe him guilty. Inasmuch as the case will be retried, we need not resolve the point. Counsel on retrial may take steps to avoid a reoccurrence.

The judgment is reversed and the case is remanded for new trial.

RENDLEN, C.J., WELLIVER, HIGGINS, GUNN and BILLINGS, JJ., and BARRETT, Senior Judge, concur.

DONNELLY, J., not sitting.