**STATE of Missouri, Plaintiff–Respondent,**

**v.**

**John David ALBRECHT, Defendant–Appellant.**

**No. 17133.**

Missouri Court of Appeals,
Southern District,
Division Two.

Sept. 23, 1991.

Motion for Rehearing or Transfer
Denied Oct. 10, 1991.

Application to Transfer Denied
Nov. 19, 1991.

Samuel J. Short, Jr., Stockton, for defendant-appellant.

William L. Webster, Atty. Gen., Millie Aulbur, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

SHRUM, Presiding Judge.

The defendant John David Albrecht was convicted by a jury of the unlawful use of a weapon, a class D felony, in violation of § 571.030.1(4), RSMo 1986, and sentenced to 90 days in the Cedar County jail in accordance with the jury's recommendation. The sole issue presented by the defendant's appeal is whether the trial court erred in denying him relief on his motion in which he alleged that the jury that convicted him was not selected in conformity to §§ 494.400–494.505, RSMo Cum.Supp.1990.

## STATUTORY BACKGROUND

In 1989, the General Assembly enacted comprehensive legislation dealing with, among other matters, the qualifications and selection of petit jurors. *See* §§ 494.-400–494.505, RSMo Cum.Supp.1990. Provisions of that recent legislation relevant to this appeal follow:

494.400. All persons qualified for ... petit jury service shall be citizens of the state and shall be selected at random from a fair cross section of the citizens of the county ... for which the jury may be impaneled....

494.410.1. The board of jury commissioners shall compile and maintain a list of potential jurors.... In compiling this list, to be known as the master jury list, the board of jury commissioners shall consult one or more public records. The master jury list shall be comprised of not

less than five percent of the total population of the county ... as determined from the last decennial census. In no event shall the master jury list contain less than four hundred names.... The master jury list shall be the result of random selection of names from public records.

494.415.1. From time to time and in a manner prescribed by the board of jury commissioners there shall be drawn at random from the master jury list the names ... of as many prospective jurors as the court may require. The board ... shall cause to be served ... a summons for jury service and a juror qualification form.

494.415.2. If it is determined from ... the juror qualification form that a person is not qualified to serve as a juror ... [s]uch names shall be deleted from the master jury list.

494.415.3. Those prospective jurors not disqualified from jury service shall constitute the qualified jury list. If any prospective juror is later determined to be ineligible or disqualified, such name shall be deleted from the qualified jury list and the master jury list.

494.420.2. Whenever a judge ... shall require a panel of jurors for jury service, he shall designate the number of jurors required. This number of jurors shall be randomly selected in a manner specified by the board of jury commissioners from the qualified jury list.

494.425. The following persons shall be disqualified from serving as a petit ... juror:

(1) Any person who is less than twenty-one years of age;

(2) Any person not a citizen of the United States;

(3) Any person not a resident of the county or city not within a county served by the court issuing the summons;

(4) Any person who has been convicted of a felony, unless such person has been restored to his civil rights;

(5) Any person unable to read, speak and understand the English language;

(6) Any person on active duty in the armed forces of the United States or any member of the organized militia on active duty under order of the governor;

(7) Any licensed attorney at law;

(8) Any judge of a court of record;

(9) Any person who, in the judgment of the court or the board of jury commissioners, is incapable of performing the duties of a juror because of mental or physical illness or infirmity.

494.465.1. A party may move to stay the proceedings or for other appropriate relief ... on the ground of substantial failure to comply with the provisions of sections 494.400 to 494.505. Such motion may be made at any time before the petit jury is sworn to try the case or within fourteen days after the moving party discovers or by the exercise of reasonable diligence could have discovered the grounds therefor, whichever occurs later.

494.465.2. Upon motion filed under subsection 1 of this section containing a sworn statement of facts which, if true, would constitute a substantial failure to comply with sections 494.400 to 494.505, the moving party is entitled to present in support of the motion ... relevant evidence. If the court determines that in selecting ... a petit jury there has been substantial failure to comply with the declared policy of sections 494.400 to 494.505, the court shall stay the proceedings pending the selection of the jury in conformity with the declared policy or grant other appropriate relief.

494.465.3. The procedures prescribed by this section are the exclusive means by which a party in a case may challenge a jury on the ground that the jury was not selected in conformity to sections 494.400 to 494.505.

## FACTS

The defendant filed a pre-trial motion pursuant to § 494.465. On the day of trial, prior to jury selection, the court held an evidentiary hearing on the defendant's motion. From the transcript of the testimony of Cedar County Circuit Clerk Larry Cul-

bertson, a member of the county's board of jury commissioners, the following facts emerge.

In Cedar County, the board of jury commissioners utilized a list of approximately 12,000 names as the public record referred to in § 494.410.1. The list was furnished on a computer disk supplied by the Office of the State Courts Administrator. Compiled by the Missouri Department of Revenue, the list contained the names of all persons holding a Missouri driver's license who had a mailing address that "could be" in Cedar County. The phrase *could be* requires clarification.

Because there are Cedar County residents whose mailing addresses are Humansville, Fair Play, Dadeville, Arcola, Jerico Springs, or El Dorado Springs, the list included the names of all persons holding driver's licenses who have ZIP codes corresponding to those communities, even though Humansville and Fair Play are in Polk County and Dadeville and Arcola are in Dade County. Similarly, although Jerico Springs and El Dorado Springs are in Cedar County, there are persons with Jerico Springs mailing addresses who reside in rural Barton County and persons with El Dorado Springs addresses who reside in rural Vernon County or rural St. Clair County. As a result, the public record used by the jury commissioners contained the names of many people not qualified to serve as jurors in Cedar County because they were not Cedar County residents, a fact that explains why the list contained the names of more than 12,000 licensed drivers when Cedar County's total 1980 population was only 11,894.

The circuit clerk testified that the list received from the Office of the State Courts Administrator was used by the jury commissioners as the "master jury list" referred to in § 494.410.1. On the issue of whether the master list contained the required number of names of Cedar County residents, the clerk testified:

Q. And from the master list that you have are there more than six hundred names who are residents of the county?

A. Yes.

Q. Which would be more than five percent of the population?

A. That's correct.

In March 1990, about three months prior to the defendant's trial, at the direction of the jury commissioners, the circuit clerk used a computer to randomly select 200 names from the master jury list to serve as the "prospective jurors," referred to in § 494.415, for the May term. The circuit clerk sent juror qualification forms to those 200 persons; between 30 and 50 were disqualified, many because they were not Cedar County residents. At the time they decided the pool of "prospective jurors" would number 200, the jury commissioners knew that number would include persons not qualified because of non-residency. No names were drawn to replace those disqualified because of non-residency. The trial court overruled the defendant's § 494.465 motion.

Following conviction by a jury, the defendant renewed his challenge to the jury selection process in his new trial motion. At a hearing on that motion, circuit clerk Culbertson testified that the qualified jury list from which the defendant's panel was drawn contained 74 names. The court admitted into evidence the defendant's exhibits that showed that of the 40 persons that constituted the defendant's jury panel, 25 had been summoned for one of two previous May term trials and three had been summoned for both previous trials. The trial court again overruled the defendant's request for relief under § 494.465. This appeal followed.

## DISCUSSION AND DECISION

On appeal, the defendant contends the trial court erred in overruling his § 494.465 motion because "there was a substantial failure to comply with the declared policy" of §§ 494.400–494.505 which resulted in a jury "not selected at random from a fair cross-section of the citizens of the county." We glean from the argument portion of the defendant's brief four alleged instances of "substantial failure" by the board of jury commissioners to comply with the statute. He charges that (1) the board should not

have consulted a public record that included names of nonresidents of the county; (2) he was entitled to but did not receive "three successive random selections of names from public records"; (3) the master list did not contain the names of 595 persons (5% of the population of Cedar County) randomly selected from public records; and (4) of the 40 persons on the panel summoned for his trial, 28 had been summoned for one of two previous trials during the May term and three persons had been summoned for both prior trials. For the reasons that follow, we find no merit in the defendant's argument.

■ A reading of Chapter 494, RSMo Cum.Supp.1990, in its entirety makes it clear that the General Assembly's mandate in § 494.400—that a jury be selected from "a fair cross section of the citizens of the county"—does not require the board of jury commissioners, in the compilation of the master list, to consult only public records that contain no names of nonresidents of the county. In § 494.425, the General Assembly identifies nine categories of persons ineligible for jury service. One such category is comprised of persons who are not residents of the county served by the court issuing the summons. The logical extension of the defendant's argument is that if nonresidents of the county are to be excluded from the master list, then all persons disqualified under § 494.-425 should be excluded at that stage in the process. The impracticality—or impossibility—of such a task is obvious.

In recognition of the need to cull from the master list the names of those not qualified to serve on a jury, the legislature provided, in § 494.415, a means whereby the board of jury commissioners could select at random a manageable number of names of prospective jurors to summon for possible service. From that pool of prospective jurors the board then eliminates those determined to be ineligible because of their responses to the juror qualification form questions. Those not eliminated constitute the qualified jury list from which the panel for a particular trial is randomly selected.

In the case before us, the board selected at random 200 prospective jurors from the master jury list and, based on their jury qualification form responses, compiled a qualified jury list from which the defendant's voir dire panel was drawn. The defendant does not contend that nonresidents of the county were on the panel from which his jury was selected.

In *State v. Bynum,* 680 S.W.2d 156 (Mo. banc 1984), the supreme court held that it is not necessary to purge unqualified jurors from the reservoir of jurors prior to the random selection of the persons to whom juror qualification forms will be sent. *Id.* at 160. We reject the defendant's argument there was a substantial failure to comply with § 494.410 because the public record consulted by the board of jury commissioners contained the names of nonresidents of Cedar County.

■ We turn now to the defendant's second and third assertions, namely that the board of jury commissioners did not comply with §§ 494.410, 494.415, and 494.420, compliance which, he argues, "requires three (3) successive random selections of names," and that the master list did not contain 595 names, a number representing 5% of the population of Cedar County. We treat these assertions together because they are founded on the defendant's erroneous premise that "[T]he master list initially contained only two hundred (200) names...."

Section 494.410 does not prohibit the Cedar County jury commissioners from using an entire public record (here, a list of 12,-000 licensed drivers) as the "master jury list." We have already determined that the presence of the names of nonresidents of Cedar County on the master jury list does not constitute a substantial failure to comply with the statute. There was testimony at the hearing on the defendant's pre-trial motion that the board of commissioners considered the 12,000 names of licensed drivers to be the master list. The circuit clerk testified that the master list of 12,000 names included more than 600 residents of Cedar County, thereby satisfying the 5% requirement of § 494.410.1. Thus it is clear from the record that the Cedar Coun-

ty board of jury commissioners maintained a master list from which they drew the names of 200 prospective jurors. To those 200 the board sent juror qualification forms which enabled the board to establish a qualified jury list. The panel from which the defendant's jury was selected was drawn from the qualified list. We reject the defendant's argument that he did not have the benefit of the proper number of random selections.

Finally, the defendant argues that his jury panel was not selected from a fair cross section of the citizens of the county because only 74 names were on the qualified jury list and, of the 40 on his panel, 25 had been summoned once before during the May term and three had been summoned twice.

■ This argument is without merit. Except for the "master jury list" of § 494.-410, the General Assembly has established no parameters on the number of names to be included on any list used to ultimately obtain a panel of jurors. The number of names to be randomly drawn to be prospective jurors (§ 494.415.1), qualified jurors (§ 494.415.3), and a jury panel (§ 494.420.2) are determined in the discretion of the trial court. On the facts before us, we hold that a qualified jury list of 74 persons and a panel of 40 drawn from that list do not constitute a substantial failure to comply with the statutory requirements.

■ There also is no merit to the defendant's complaint that the "fair cross section" requirement of § 494.400 was violated because 28 of the persons on his 40–person jury panel had been previously summoned during the same term. The only relevant statutory restriction is § 494.445, which provides: "No petit juror shall be required to attend court for prospective jury service more than twenty days in any one-year period except as is necessary to complete service in a particular case." This statutory provision provides the defendant no relief.

The defendant relies on *State v. Gresham*, 637 S.W.2d 20 (Mo. banc 1982), and *Bynum*, 680 S.W.2d 156. The condemned

practices in those cases are not present here.

We conclude there was no substantial failure to comply with the provisions of §§ 494.400–494.505. We affirm the judgment.

FLANIGAN, C.J., and MAUS, J., concur.