STATE of Missouri, Respondent,

v.

**Jeffery M. ROGERS, Appellant.**

**No. WD 44,097.**

Missouri Court of Appeals,
Western District.

· Feb. 25, 1992.

**2.** Section 287.400 provides for the filing of a claim to obtain benefits under the Workers' Compensation Law.

Michael B. Watkins, Chillicothe, for appellant.

William L. Webster, Atty. Gen., Jefferson City, Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before FENNER, P.J., and ULRICH and SPINDEN, JJ.

SPINDEN, Judge.

Jeffery Rogers appeals his conviction and 10–year prison sentence for the Class A felony of knowingly possessing and controlling more than 500 marijuana plants in violation of § 195.223.8, RSMo 1986. We affirm the conviction and sentence.

Tipped by a suspicious neighbor, officers found more than 6000 marijuana plants being cultivated in a corn field on Rogers' farm in Daviess County. They also found marijuana growing in areas other than the corn field, including 55 plants near a small camp where someone had pitched a tent. The soil around the marijuana was loose. No weeds were growing around the plants, and someone had fertilized many of them. Some of the plants were seven feet tall—nearly as tall as the corn.

At about 7 A.M. on September 21, 1989, officers posing as hunters went to Rogers' house under the guise of asking him about hunting on the property. During their conversation, when Rogers acknowledged that he owned the farm and had planted the corn growing on it, they arrested him. The officers searched his house for other occupants. During the search, they saw several ash trays containing what appeared to be marijuana butts. They left the house without seizing anything and transported Rogers to jail.

Officers obtained a search warrant and searched Rogers' house and several of his outbuildings. At that time they seized the butts from the ash trays and marijuana leaves lying on a windowsill. They cut

down the marijuana plants and loaded them on a flatbed truck. An officer took samples of the destroyed plants according to where they had been growing. They transported the plants to the Daviess County courthouse and then to Sheriff Tom Houghton's house in Gallatin. There, the next morning, a sheriff's deputy filled three plastic trash bags with some of the plants. He placed samples from each bag into a small evidence bag. Officers, without authorization, then burned the remaining plants.

Rogers assigns six points of error in challenging the legality of his conviction. We will consider each point in the order raised in Rogers' brief.

### JURY VENIREMEN

Rogers asserts that a large number of adherents to the Amish faith live in Daviess County, but the state's method of selecting potential jurors from lists of persons with driver's licenses systematically excluded all of them. Rogers complains, "[T]hese persons have been excluded continually from the jury pools used to select petit juries, including Rogers's jury, in violation of the sixth and fourteenth amendments to the United States Constitution."

■ Even if we were to concur that the absence of Amish adherents from the jury venire was a constitutional violation, we would reject Rogers' contention of error. To establish error, Rogers must show that the jury selection process systematically excludes a "distinctive group" of persons. *Duren v. Missouri*, 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979).

Rogers did not establish that any group—much less a distinctive group—was excluded. Rogers baldly asserts, with no proof whatsoever, that "the Amish in Daviess County have been continually underrepresented in the jury pools of the county due to the system under which the jury pools are chosen." Rogers tries to substitute logic for statistics. He reasons that driving an automobile is contrary to the Amish faith, and because the jury list is taken from a list of licensed drivers, it necessarily excludes all Amish. His logic

might be sound, but it is based on an unsubstantiated assumption: Amish adherents shun automobiles. Rogers offers no proof of that assertion.

Rogers' bald, unsubstantiated assertion is insufficient to meet his burden of proof. "The charge that a jury is unconstitutionally structured is not self-proving." *State v. Hayes*, 713 S.W.2d 275, 278 (Mo.App.1986). Not only does Rogers not substantiate his assertion, but his own evidence contradicts it. He asked the circuit clerk, "And based upon your understanding of Amish people, do any of those people have driver's licenses?" She answered, "I understand some do."

### SHERIFF PARTICIPATION IN JURY SELECTION

Rogers complains that Sheriff Houghton's role of calling persons on the list of veniremen and telling them that they were being called for jury duty tainted the process sufficiently to constitute a denial his right to a fair trial. The courts have held that if a law enforcement officer who was involved in investigating a crime is also significantly involved in the selection of jurors, the danger that the officer will hand-pick jurors sympathetic to the prosecution is sufficiently great that it will render the process unconstitutional. *Henson v. Wyrick*, 634 F.2d 1080 (8th Cir.1980).

■ A three-person commission prepared a 67–name list of potential jurors for Rogers' trial. Neither Sheriff Houghton nor any of his employees had any involvement in selecting the 67 names. The sheriff's role merely was to call the individuals listed to alert them that they were being called for jury duty; he did not excuse anyone and had no authority to do so.

The sheriff selected none of the jurors. The process did not present a danger of a "conviction-prone jury." We find no merit in Rogers' contention of error.

### STATE DISCOVERY VIOLATIONS

■ On October 5, 1989, more than 13 months before trial, Rogers filed a motion for disclosure which he says requested the

state to disclose any recorded statements or of any audio or video surveillance.[1] Rule 25.03(A) provides:

Except as otherwise provided in these Rules as to protective orders, the state shall, upon written request of defendant's counsel, disclose to defendant's counsel such part or all of the following material and information within its possession or control designated in said request:

\* \* \* \* \* \*

(2) Any written or recorded statements and the substance of any oral statements made by the defendant or by a co-defendant, a list of all witnesses to the making, and a list of all witnesses to the acknowledgment, of such statements, and the last known addresses of such witnesses;

\* \* \* \* \* \*

(8) If there has been any photographic or electronic surveillance (including wiretapping), relating to the offense with which the defendant is charged, of the defendant or of conversations to which the defendant was a party or of his premises; this disclosure shall be in the form of a written statement by counsel for the state briefly setting forth the facts pertaining to the time, place, and persons making the same[.]

 Although on at least three occasions state officers swore that the state had not taped any statements by Rogers, the prosecutor filed with the trial court during the trial's second day a supplementary disclosure that he had been informed that officers had tape recorded their conversation with Rogers immediately before his arrest. The prosecutor told the court that the tape had been placed inadvertently in another case's file. Although none of Rogers' comments were audible, Rogers played the tape for the jury in support of his contention that he had not consented to the officers' search of his house.

After the trial, Rogers learned that officers had a video tape of officers cutting down plants on his farm. An officer taped the events from a helicopter flying over the farm. The trial court refused to grant him a new trial on the basis of this undisclosed tape.

We concur with Rogers' contention that the state's failure to disclose these items is serious. We do not take lightly the state's failure to heed Rule 25.03. We are especially concerned that although an officer discovered the audio tape at about 4:25 P.M. on September 24, 1990, the prosecutor did not mention it until the second day at trial, on September 27, 1990. The state excuses the delay:

[The prosecutor] immediately [after an officer told him of the tape's discovery] filed a supplemental discovery response to alert defense counsel to the fact that the tape had been discovered, and made arrangements for its delivery to the defense counsel's office in Chillicothe, Missouri[.] Unfortunately, however, the delivery of the tape was inadvertently delayed and the appellant's attorney did not receive the tape until the morning of the second day of trial, September 27th[.]

The state offers no explanation why the prosecutor could not have, at least, mentioned the tape to his opponent on the first day of trial.

Nonetheless, because of Rogers' inability to articulate that he suffered prejudice—that the lateness of receiving the tape affected the outcome of his trial, we conclude that the error is not a sufficient basis for reversing Rogers' conviction. Upon learning of the audio tape, the trial court immediately recessed the trial and gave Rogers an opportunity to review the tape. Rogers decided to use the tape to try to persuade the jury that he did not consent to the officers' first search of his house. Even if he had not consented, however, the law provides, as we will discuss later, that the officers had a right to search Rogers' house to ascertain that no one was present

---

1. Rogers did not include his discovery motion in the record before this court. This is sufficient to deny his point. *State v. McCoy,* 559 S.W.2d 298 (Mo.App.1977). Nevertheless, this court, *ex gratia,* will consider his point.

who presented a danger to the officers. Rogers' voice was not even audible. Rogers could not articulate any other benefit he would have gained from having the tape earlier. He asserted at oral argument only that the state's violation of Rule 25.03 was egregious and should be punished by overturning his conviction. While we recognize the seriousness of the state's violation, we do not see a basis for concluding that the trial court abused its discretion in denying Rogers' motion for sanctions.

We reach the same conclusion concerning the video tape. It duplicated numerous still photographs of Rogers' farm. It was so shaky that viewers had difficulty ascertaining what they were viewing. Rogers argued that he could have used it to verify that the marijuana plants were wild, not cultivated, but we do not believe that the tape would have been nearly as beneficial in that regard as the still photographs. Although Rogers argues that he could have asked his expert witness to examine the tape and opine whether any of the plants were wild, Rogers did not ask him to do that with the still photographs which were available. The trial court commented:

> At the request of counsel, the Court ... viewed the video tape and from the Court's viewing of that tape I feel that the tape is [inculpatory] rather than exculpatory. I see absolutely nothing in the tape that would have assisted the defendant in any way in ... his defense, but rather would have made the defense more [difficult].

This is a reasonable conclusion. Rogers has failed to persuade us that the trial court abused its discretion.

## IMPROPER DESTRUCTION OF PLANTS

■ Rogers complains that, because officers burned the marijuana plants without authorization and kept only samples, he lost significant defense evidence. He reasons that the statute under which he was charged, § 195.223.8, RSMo Supp.1991, requires the state to prove that he possessed or controlled more than 500 marijuana plants. Although the state presented evidence that 6323 marijuana plants were growing on Rogers' farm, he contends that it was wild, and all he needed to do to defend against the state's charges was to establish that he was cultivating no more than 499 of the plants.

We agree that it is indeed unfortunate that officers chose to ignore the law and to burn the plants without proper authorization, but their action did not affect Rogers' defense. The defense he outlines would not have been successful even if officers had not burned the plants. Section 195.-223.8 does not make a distinction between cultivated and wild marijuana. Section 195.010(26), RSMo Supp.1991, defines marijuana as "all part of the plant genis Cannabis in any species or form thereof[.]" Even if Rogers had established that all 6323 plants were wild, the state would have made a submissible case by establishing that Rogers had taken dominion and control over the wild plants. Section 195.-010(33), RSMo Supp.1991. We find no merit to his point.

## WARRANTLESS SEARCH

Rogers complains, on a misconception, that officers searched his house without a search warrant immediately, and, after arresting him, seized "a small amount of marijuana and some personal items[.]" The portion of trial transcript which Rogers cites to substantiate his contention does not. In the testimony cited by Rogers, Missouri Highway Patrol Trooper Charles McCrary stated emphatically that officers searched the house with Rogers' consent for other persons who might be a danger to them and seized nothing until they returned, about three hours later, with a search warrant.

■ We discern no merit to Rogers' point. Although officers first saw the items later seized during a warrantless search, their search was lawful. The trial court heard evidence that Rogers consented to the search. Even if he had not, the officers had a right to make a protective search of the house to ascertain that they were not in danger of an ambush by someone in the house. *Maryland v. Buie*, 494

**54**

U.S. 325, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990).

## INSTRUCTION

 The trial court refused Rogers' request that the jury be given a verdict directing instruction concerning the manufacture of marijuana. Rogers contends that the instruction denied him the defense that at least some of the marijuana found on his farm was wild, not cultivated. He complains primarily that the court's instruction did not properly apprise the jury that it had to find that he possessed the marijuana plants.

The trial court properly refused Rogers' requested instruction. The state had charged Rogers with trafficking drugs in the second degree pursuant to § 195.223.8, not with manufacturing marijuana, prohibited in § 195.020.1. The instruction given by the court accurately tracked the pattern instruction, MAI–CR 3d 325.14, and directed the jury to find that Rogers "possessed more than five hundred marihuana plants[.]" The instruction included a definition of "possessed:"

> As used in this instruction, the term "possessed" means either actual or constructive possession of the substance. A person has actual possession if he has the substance on his person or within easy reach and convenient control. A person who is not in actual possession has constructive possession if he has the power and intention at a given time to exercise dominion or control over the substance either directly or through another person or persons.

 An instruction which follows the format of MAI–CR will not be deemed to be in error. *State v. Newlon,* 627 S.W.2d 606, 614 (Mo.banc), *cert. denied,* 459 U.S. 884, 103 S.Ct. 185, 74 L.Ed.2d 149 (1982). An applicable MAI–CR instruction must be used to the exclusion of any other instruction. Rule 28.02(c); *State v. Shatto,* 786 S.W.2d 232, 234 (Mo.App.1990). Rogers' point is without merit.

## CONCLUSION

We find no merit to Rogers' contentions of error. We affirm the trial court's judgment and sentence.

All concur.