**STATE of Missouri, Respondent,**

v.

**Lonny J. HOFMANN, Appellant.**

**No. WD 48533.**

Missouri Court of Appeals,
Western District.

Jan. 24, 1995.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 28, 1995.

Application to Transfer Denied
April 25, 1995.

F. Randall Waltz, Jefferson City, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Breck K. Burgess, Asst. Atty. Gen., Jefferson City, for respondent.

Before FENNER,·C.J., P.J., and KENNEDY and BERREY, JJ.

FENNER, Chief Judge.

Appellant, Lonny Hofmann, appeals his conviction, after trial by jury, for possession of more than 5 grams of marijuana with intent to distribute.

Taken in the light most favorable to the verdict, the record reflects that in the daylight hours of February 8, 1992, Trooper Timothy Peters of the Missouri State Highway Patrol observed Hofmann weave across the center line of the eastbound lanes of I–44 in Laclede County, Missouri. Upon stopping Hofmann's vehicle, a Ford Taurus, Trooper Peters observed that Hofmann was driving the vehicle with a passenger by the name of Robin Marshall. When Trooper Peters approached the vehicle, he noticed that the hands of both Hofmann and Marshall were shaking.

Trooper Peters had Hofmann join him in his patrol car as he ran a check on Hofmann's driver's license. When Trooper Peters asked to see the registration papers for the Taurus, Hofmann advised him that it was a rental car. Peters said the car had been rented in Indiana by his wife, Dawn Hofmann. Trooper Peters inquired as to where Hofmann was coming from and Hofmann advised him that he started his trip in Amarillo, Texas. Trooper Peters asked Hofmann where his wife was and Hofmann said that she was in San Diego with her aunt. Since Hofmann and Marshall appeared nervous and Trooper Peters was curious about Hofmann saying that he was coming from Amarillo while his wife was in San Diego, Trooper Peters decided to check Hofmann's story with Marshall.

Trooper Peters went back to the Taurus and asked Marshall where he was coming from. Marshall advised that they were coming from St. Louis which Trooper Peters noted was the direction that the Taurus was preceding toward, not from. Trooper Peters then asked Marshall where Hofmann's wife was and Marshall stated that she was at her aunt's house in St. Louis, Missouri.

Trooper Peters returned to his patrol car and asked Hofmann whether he had any guns or narcotics in the Taurus. Hofmann said that he did not. Peters then asked if Hofmann would consent to a search of the Taurus. Hofmann told Trooper Peters, "Sure, go ahead."

Trooper Peters had radioed for backup. Pursuant to the call, Sergeant Turner of the

Missouri Highway Patrol and Officer Wrinkle of the Lebanon Police Department arrived at the scene. When Sergeant Turner and Officer Wrinkle arrived, Trooper Peters instructed Hofmann to exit the patrol car and approach the Taurus.

Trooper Peters then asked Hofmann if he could look in the trunk. Hofmann pushed a button by the driver's seat to release to trunk lid. Trooper Peters proceeded to search the trunk as Hofmann and Marshall stood on the shoulder of the road approximately three feet from Trooper Peters. While searching the trunk, Trooper Peters opened a blue suitcase and observed clothing in the suitcase. Trooper Peters raised up the clothing and discovered twelve clear bags which contained a total of less than ten pounds of marijuana. Hofmann and Marshall were placed under arrest, advised of their Miranda rights and transported to the Lebanon police station.

When the parties arrived at the Lebanon police station, Trooper Peters reminded Hofmann of his Miranda rights and asked him where he obtained the marijuana. Hofmann advised Peters that he obtained the marijuana in Mexico. Trooper Peters then asked Hofmann what he intended to do with the marijuana. Hofmann said that he was going to sell it to an individual in Indiana who would then sell the marijuana to others.

At trial, Hofmann testified in his defense and attempted to show that he did not consent to the search of the Taurus and suitcase. Hofmann admitted at trial to possessing the marijuana and that he was delivering the marijuana for payment.

## I.

In his first point on appeal, Hofmann argues that the trial court erred by denying his motion to quash the venire panel because the panel was improperly selected in violation of section 494.400, RSMo Supp.1993. Hofmann argues that the venire panel did not constitute a fair cross section of the adult population of Miller County, the county in which he was tried, and because the method of select-

ing the panel was not random and permitted an opportunity for individual selections.

The procedures prescribed by section 494.465 are the exclusive means by which a party may challenge a jury on the ground that the jury was not selected in conformity to sections 494.400 to 494.505.[1] Section 494.465.2 provides, in pertinent part, as follows:

> If the court determines that in selecting either a grand jury or a petit jury there has been substantial failure to comply with the declared policy of sections 494.400 to 494.505, the court shall stay the proceedings pending the selection of the jury in conformity with the declared policy or grant other appropriate relief.

In regard to appellant's argument that the venire panel did not constitute a fair cross section of the adult population of Miller County, section 494.400 requires, in pertinent part, that all qualified grand or petit jurors shall be citizens of the state selected at random from a fair cross section of the citizens of the county for which the jury may be impaneled. To establish a prima facie violation of the fair cross section requirement, a defendant must show that: 1) the persons excluded from jury service are members of a "distinctive group in the community;" 2) that the representation of this group in the venires is "not fair and reasonable in relation to the number of such persons in the community;" and 3) that the under representation results from a "systematic exclusion of the group in the jury selection process." *State v. Rogers,* 825 S.W.2d 49, 51 (Mo.App.1992). Unless it is shown that the difference between the percentage of the individuals in the identifiable group and those within the venires as a whole is greater than 10%, a prima facie case has not been made. *State v. Davis,* 646 S.W.2d 871, 876 (Mo.App.1982), *cert. denied,* 464 U.S. 962, 104 S.Ct. 398, 78 L.Ed.2d 340 (1983).

In the case at bar, appellant failed to present evidence to show that persons excluded from jury service were members of a cognizable group within the community

---

1. All statutory references are to RSMo Supp. 1993 unless otherwise specifically stated.

which was fatally under-represented on the venire panel.

■ Hofmann complains further under his first point that the selection process was not random. However, the record reflects that the individuals selected for jury service were selected at random from driver's license records. The use of driver's license records for a master list of potential jurors has been sanctioned under Missouri case law. *See State v. Kelly*, 851 S.W.2d 693, 697–98 (Mo. App.1993); *State v. Rogers*, 825 S.W.2d at 51.

■ Hofmann also complains that the "master jury list" used in this case was fatally defective because it was not periodically updated as mandated by section 494.410.1.

The record is devoid of evidence to show that the list of potential jurors was not periodically updated as required by section 494.410.1. The record reflects that the master list for Miller County had been in use for three years. The term "periodically" is defined as meaning "1. at regular intervals, 2. from time to time; recurrently." *Webster's New World Dictionary* 1057 (2nd College Ed.1986). Use of a master list for a period of three years does not establish a substantial failure to periodically update the master jury list.

■ Hofmann's final complaint under his first point is that section 494.415 requires a summons for jury service to be served in the manner prescribed by law for the service of summons or by ordinary mail, not by phone as in the case at bar.

Section 494.415 provides the process for prospective jurors to be selected from a master list. Section 494.415 requires a summons for jury service to be served in a manner prescribed by law for the service of summons or by ordinary mail. Along with the initial summons, a jury qualification form is directed to the prospective jurors. The prospective jurors are required to fill out the form and return it to the court. After review of the completed juror qualification form, those prospective jurors not disqualified from jury service are placed on a qualified jury list. Whenever a panel of jurors is required for jury service, the number of jurors necessary are to be randomly selected from the quali-

fied jury list. Section 494.420.2. "Those persons constituting the qualified jury list, *when summoned,* shall be placed under the control and supervision of the sheriff or other person designated ... in a designated area to be provided in the courthouse." Section 494.420.1 (emphasis added).

Appellant appears to be complaining that the persons contacted from the qualified jury list in the case at bar were not served with a summons to appear for jury duty. However, section 494.420.1 does not require actual service of process on those individuals contacted for jury service from the qualified jury list. Section 494.420.1 merely requires that those selected are to be "summoned."

The primary rule of statutory construction is to determine the intent of the legislature from the language used to give effect to that intent, and to take the words of a statute in their plain and ordinary meaning. *Gammaitoni v. Director of Revenue*, 786 S.W.2d 126, 130 (Mo. banc 1990). Summons is defined as: "1. to call together; order to meet or convene 2. to order to come or appear; call for or send for with authority or urgency 3. to order, as by a summons, to appear in court 4. to call upon to do something 5. to call forth; rouse; gather; collect." *Webster's New World Dictionary* 1426 (2d College Ed.1986). Summons by service of process is but one definition of summon. Other common meanings of summon encompass contact by less formal means such as that employed in the case at bar. Contacting persons from a qualified jury list by phone to appear for jury duty is not a substantial failure to comply with the policy declared under section 494.420.1.

As in the case at bar, contacting jurors by telephone was the process used in *State v. Rogers*, 825 S.W.2d 49, 51 (Mo.App.1992). This method of contacting jurors was not criticized by the court in *Rogers*. Nonetheless, appellant argues that the use of a telephone call instead of actual service of summons as a means of notifying potential jurors was condemned by the Missouri Supreme Court in *State v. Bynum*, 680 S.W.2d 156, 160 (Mo. banc 1984).

In *Bynum*, a list of individuals who returned their questionnaires and were designated as qualified jurors was delivered to the sheriff. *Id.* at 160. A deputy sheriff then made out a card for each individual, shuffled the cards, and selected the cards of individuals as needed. *Id.* In *Bynum*, the court noted that:

> The drawing is supposed to be performed by the "clerk of [the] board," so situated as to be unable to see the names on the individual cards.... Here a deputy sheriff made the selection, and by his own testimony, gave some attention to the names on the individual cards. What is more important, furthermore, was that he was in a position to make individual selections. The sheriff should be limited to summoning jurors from the list supplied by the clerk's office. If there is to be a designation of the order of calling jurors, it must come from the clerk. There must be no opportunity for individual intervention at any stage of the selection process.

*Id.* at 161.

*Bynum* did not condemn the use of a telephone to notify potential jurors. Furthermore, the case at bar is distinguishable from *Bynum*. In the case at bar, deputy sheriffs did not make the telephone call, rather, deputy clerks made the calls. There was no evidence that the clerks in the case at bar had any discretion regarding who to call. The record does not show that the calls were made in an order other than as chosen by the computer. The record likewise did not show that anyone evaluated the individuals or their predispositions before contacting them for jury service.

Appellant's first point is denied.

## II.

In his second point, appellant argues that the trial court abused its discretion by overruling his motion to suppress and allowing into evidence the marijuana seized from a suitcase in the trunk of the car which he was driving.

■ A trial court has broad discretion in determining the admissibility of evidence. *State v. Clark*, 711 S.W.2d 928, 932 (Mo.App.

1986). To establish an abuse of discretion, a defendant must show that reasonable persons could not differ as to the propriety of the action taken by the trial court. *State v. Jimerson*, 820 S.W.2d 500, 502 (Mo.App. 1991).

■ Appellate review of a ruling on a motion to suppress is limited to determining whether the evidence is sufficient to support the trial court's ruling. *State v. Thompson*, 826 S.W.2d 17, 19 (Mo.App.), *cert. denied*, —— U.S. ——, 113 S.Ct. 242, 121 L.Ed.2d 176 (1992). On review, an appellate court considers the facts and reasonable inferences of those facts in a light most favorable to the trial court's ruling. *State v. Rodriguez*, 877 S.W.2d 106, 110 (Mo. banc 1994). The weight of the evidence and the credibility of witnesses is for the trial court's determination. *State v. Burkhardt*, 795 S.W.2d 399, 404 (Mo. banc 1990).

■ A consent to search is valid only if it is freely and voluntarily given. *State v. Hyland*, 840 S.W.2d 219, 221 (Mo. banc 1992). Consent is freely and voluntarily given if, considering the totality of all the surrounding circumstances, an objective observer would conclude that the person giving consent made a free and unconstrained choice to do so. *Id.*

■ The record in the case at bar reflects that only Trooper Peters was present when appellant consented to the search, no weapons were drawn, the appellant had only been detained for a short period of time when consent was given, appellant was not under arrest, handcuffed or otherwise restrained, and there is no evidence of fraud on the part of Trooper Peters. Furthermore, appellant was aware that Trooper Peters desired to search for guns or drugs and appellant consented to the search of the trunk of the vehicle.

Appellant and his passenger, Marshall, stood approximately three feet away from Trooper Peters and watched as he conducted the search. Appellant was not restrained during this period of time and appellant never requested that Trooper Peters stop the search. Considering the totality of circumstances, it is reasonable to conclude that appellant made a free and unconstrained

choice to allow Trooper Peters to search the trunk of his car and the suitcase in the trunk in which the marijuana was found.

■ The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of objective reasonableness, *i.e.,* what the typical person would have understood by the exchange between the officer and the suspect. *Hyland,* 840 S.W.2d at 222. Appellant recognizes that Missouri case law has allowed the search of all containers within a vehicle including suitcases and luggage within the trunk pursuant to a voluntary consent to search the vehicle. *State v. Malaney,* 871 S.W.2d 634 (Mo.App.1994); *State v. Melville,* 864 S.W.2d 452 (Mo.App.1993); *State v. Law,* 847 S.W.2d 134 (Mo.App.1993). Appellant argues that these cases should be reconsidered and overruled. We decline appellant's invitation to do so.

Appellant's second point is denied.

### III.

In his third point, appellant argues that the trial court erred by refusing to submit his Instruction No. A.

Appellant's Instruction No. A was a verdict director for the offense of possession of more than 35 grams of marijuana. Appellant argues that this instruction presented a lesser included offense of possession of more than 5 grams of marijuana, with intent to distribute, which was the offense submitted against appellant.

■ "The test to be applied to determine if an offense is a lesser included offense is: 'If the greater of two offenses includes all the legal and factual elements of the lesser, the greater includes the lesser; but if the lesser offense requires the inclusion of some necessary element not so included in the greater offense, the lesser is not necessarily included in the greater.'" *State v. Blewett,* 853 S.W.2d 455, 459 (Mo.App.1993). Furthermore, an instruction on a lesser included offense is required only where there is affirmative evidence with probative value which could form the basis of an acquittal of the greater offense and a conviction of the lesser

included offense. *State v. Pruett,* 805 S.W.2d 724 (Mo.App.1991).

■ The offense of possession of over 35 grams of marijuana is not a lesser included offense of possession of more than 5 grams of marijuana, with intent to distribute. Possession of more than 35 grams of marijuana requires a showing that appellant possessed more than 35 grams of marijuana which is not an element of the offense of possession of more than 5 grams of marijuana with intent to distribute.

In *State v. Polk,* 864 S.W.2d 1, 3 (Mo.App. 1993), the court held that possession of more than 35 grams of marijuana was not a lesser included offense of manufacturing marijuana, because in the former offense the state had to prove that the defendant possessed more than 35 grams of the marijuana, while in the latter offense the state only had to prove that the defendant manufactured more than 5 grams of marijuana and was not required to prove that appellant possessed over 35 grams of marijuana. *Id.* Likewise, in *State v. Burns,* 877 S.W.2d 111 (Mo. banc 1994), the Missouri Supreme Court held that a second prosecution for possession of more than 35 grams of marijuana was not barred as violative of double jeopardy after the defendant was acquitted in an earlier prosecution for possession with intent to distribute more than five grams of marijuana, because proof of 35 grams was an additional element which the State was required to prove. *Id.* at 112.

Appellant's third point is denied.

### IV.

In his fourth point, appellant argues that the trial court erred by refusing to submit the voluntariness of his consent for search to the jury.

■ Issues pertaining to whether evidence should be suppressed because of alleged violations of the Fourth Amendment are issues for the trial court, not the jury. *See,* section 542.296, RSMo 1986; *see also State v. Dwyer,* 847 S.W.2d 102, 103–04 (Mo.

App.1992). Appellant's fourth point is denied.

The judgment of the trial court is affirmed.

All concur.